15349

PFAEHLER v. TEN CENT TAXI CO.
(Two Cases)
(18 S. E. (2d), 331)

*Messrs. Waring & Brockinton,* of Charleston, for appellants,

*Messrs. Hagood, Rivers & Young,* of Charleston, for respondent,

January 7, 1942.

The opinion of the Court was delivered by MR. CHIEF JUSTICE BONHAM.

These two actions were tried in the Civil and Criminal Court of Charleston, and were heard together as they grew out of the same state of facts. The plaintiffs in the actions are husband and wife. The action of Edward A. Pfaehler is to recover damages for injury to his automobile and to his person; and that of Mrs. Annie C. Pfaehler is for injuries to the person. There were verdicts for each plaintiff. Briefly stated, the facts upon which the actions were tried, as alleged in the complaints, were these:

Mr. and Mrs. Pfaehler were driving their automobile on Meeting Street, in Charleston, on the 21st of June, 1936, when an automobile, the property of the defendant, was, as is alleged, carelessly, negligently and recklessly driven into and upon their automobile, which did great damage to it, and inflicted personal injuries to both of the occupants.

The defendant, by its answer, admitted the ownership of the automobile, but denied the other allegations of the complaint, and stood, on the trial, upon the ground that the automobile was not in its possession, nor being operated for its benefit, when the collision occurred.

As stated, the verdicts were for the plaintiffs. Upon the appeal of the defendant to the Court of Common Pleas for Charleston County, it was heard by the Honorable William H. Grimball, presiding Judge, who, by his order, dated May 28, 1940, reversed the action of the Civil and Criminal Court, and ordered the case back for a new trial. From that order, appeal comes to this Court upon two exceptions, as follows:

"1. In holding that a new trial should be granted because the Trial Judge charged the jury as to Ordinances of the City of Charleston, whereas he should have held:

"(a) The charge on the Ordinances was not asked for or objected to by either party.

"(b) The charge was in no sense prejudicial and did not affect the outcome of the case.

."(c) There was no denial by the Defendant that the car was being operated negligently and illegally, the defense being that the Defendant was not responsible for such operation.

"(d) The charge could not in any way have affected the outcome of the cases, since there was an abundance of proof that the taxi cab was being negligently operated and there was no denial of the same.

"2. In holding that the Defendant was not responsible for the operation of the taxi cab involved in the collision and that the Trial Judge should have directed a verdict, whereas the testimony showed:

"(a) That Arnold Rose, the driver and duly constituted agent of the Defendant, was in the sole and exclusive control of the taxi cab and placed an intoxicated person in the front seat next to the driver's seat, placed the ignition key. where it was available for the starting of the car and himself left the automobile under the complete control and possession of the intoxicated person.

"(b) In that the said driver and agent of the Defendant failed to use due care and prudence in the conduct and handling of Defendant's automobile and allowed it to be taken away and negligently operated.

"(c) The negligence of Defendant's agent and servant, to wit: the driver was the direct and proximate cause of the collision, which resulted in the injuries to the Plaintiffs' persons and property."

It appears from the record that Arnold Rose, the employee of defendant company, on the day in question, had driven the automobile which collided with Mr. Pfaehler's machine, to a point outside of the city limits, to a place of entertainment known as The Cat and the Fiddle, to carry passengers for hire, whom he left at that place of entertainment. One of

them engaged Rose to come back for him at a certain time, and paid him in advance for that purpose.

The plaintiffs introduced the testimony of Mr. and Mrs. Pfaehler, in relation to the incidents of the collision and the personal injuries of the two plaintiffs, and also the testimony of witnesses relating to the injury done to the automobile, and also to the personal injuries to the plaintiffs, and rested their cases there.

The defendant introduced the testimony of Joe Sottile, an officer of the Ten Cent Taxi Company, who swore that the company did not employ anyone by the name of John Varn, or authorize anyone of that name to drive the car in question. Thereupon the defendant offered the testimony of Arnold Rose, who testified that he was the driver of the automobile of the defendant company. He testified that on the 21st of June, 1936, he was in the employ of the Ten Cent Taxi Company, and on that day had in charge the car which was in the collision with Mr. Pfaehler; that he was not driving the car at the time of the collision; that it was being driven by "a fellow I had picked up named John Varn." He testified that he did not give anyone permission to drive the car. He stated that he had carried some passengers from the city to a place of entertainment outside the city limits known as The Cat and the Fiddle, and had left them there. One of them, John Varn, engaged him to come back for him, and paid him in advance. He testified further:

" * * * I went back there about 10:30 that night, and I found him sitting on a little step outside * * * . I took him over to the car, opened the door and sat him in the seat next to the driver.

"Q. How drunk was he at that time? A. I would say that he was almost passed out, he was sleepy and drowsy.

"Q. What did you do then? A. I started the motor and started to back the car out to come to the City, and the fellow was lying with his arm on the door, and he looked like he was sleeping.

"Q. What took place then? A. I was just about to straighten out, when one of the girls called me and told me that I was wanted on the phone. So I cut off the ignition and went inside to answer the phone and when I came out again, he had just driven off with the car * * * ."

On cross examination this witness testified:

"Q. When you picked this young man up, you could tell that he was drinking? A. Yes.

*   *   *   *   *

"Q. And you say that you took him to the Hotel? A. Charleston Hotel.

"Q. And you then waited for him? A. Yes.

"Q. And then you went somewhere to buy some liquor? A. Yes.

"Q. And then he met the sailors and the girls? And they all took some drinks? A. Yes. * * * The sailors came back to town with me.

"Q. And you left him at the Cat and Fiddle? A. Yes.

"Q. And he was still drinking? A. Yes.

"Q. And he paid you to come back for him and you went up to the Cat and Fiddle to bring him back to the City? A. Yes.

*   *   *   *   *

"Q. And you could see that he was a very drunk man? A. Yes.

"Q. He was staggering around? A. Yes.

"Q. And you grabbed his arm? A. I opened the door for him.

"Q. The front door? A. Yes.

"Q. And you put him on the front seat alongside of yourself? A. Yes.

*   *   *   *   *

"Q. And you sitting on the same seat with him? A. Yes.

"Q. And you turned on the ignition? A. Yes.

"Q. And you started the car and started to back out? A. Yes.

"Q. With the drunk sitting alongside of you? A. Yes.

"Q. And then someone called you to the phone? A. Yes.

\* \* \* \* \*

"Q. Then you stopped your car? A. Yes.

\* \* \* \* \*

"Q. You stopped the motor? A. Yes.

"Q. And left the keys in the switch? A. Yes.

"Q. Then you got out and went inside? A. Yes.

"Q. And you left this man sitting in the car? A. Yes.

"Q. And you then went inside to get your phone message? A. Yes.

\* \* \* \* \*

"Q. And when you came out, this drunken man had driven off with your car? A. Yes.

"Q. Did you see him drive off? A. Just as I came out the door, he drove off.

"Q. You saw him driving it off? A. Yes.

"Q. Was anybody in the car with him? A. No.

\* \* \* \* \*

"Q. You went on down to the scene of the accident? A. Yes.

"Q. And you saw that this car had been in a bad wreck with Mr. Pfaehler's car? A. Yes.

\* \* \* \* \*

"Q. You could see that his car was ruined? A. Yes.

\* \* \* \* \*

"Q. And you were put in charge of that car by the Ten Cent Taxi Company? A. Yes.

"Q. And you had complete charge of it that night? A. Yes.

"Q. And you still in charge of it when you left the keys in the lock with this drunk on the seat alongside of you? A. Yes."

At the conclusion of the testimony, the defendant made a motion for a directed verdict, which motion was refused. The presiding Judge charged the jury generally as to the law

of negligence, and other matters pertinent to the issues. The only part of the charge necessary to be set out is the following, which the Court charged the jury without request by either party, and no exceptions or objections were made by either party: "As this collision happened in the City of Charleston the ordinances of the City of Charleston would apply to the drivers of both vehicles; and if either of these drivers violated any of the city ordinances then he would be guilty of negligence *per se* or guilty of negligence as a matter of law, and if such negligence were the cause of the collision then that driver would be responsible for it."

The appeal of the plaintiffs from the order of Judge Grimball is predicated upon two grounds, which we have heretofore quoted herein. The first exception is based on the contention that a new trial should be granted because the trial Judge charged the ordinances of the City of Charleston.

In the argument of this case before us, appellants' attorneys asked for, and were granted, the right to criticize the opinion of the Court in the case of *Steinberg v. South Carolina Power Company*, 165 S. C., 367, 163 S. E., 881, which case turned upon the question of the applicability of the ordinances of the City of Charleston in relation to the operation of automobiles therein, and this Court was asked to revoke its opinion in that case.

We do not think that should be done. That case, in our judgment, was properly decided in view of the facts in the case, which facts in no way coincide with the facts in this case. In that case, the collision was between a street car of the defendant, and the plaintiff's automobile, as the automobile backed out from the curb where it was parked on the south side of Broad Street, at an angle to the curb. The complaint contained the usual allegations of negligence and recklessness charged in such cases, as the cause of the collision and damages resulting therefrom. One of the defenses set up by the defendant in that case is the allegation that the collision was caused by the failure of the driver of the automobile to observe and obey the ordinances of the city.

We think, in that case, that the Court did not err in charging the ordinances of the city in such circumstances. The ordinances were expressly made an issue in that case, and it was the duty of the Court to charge them, but in the present case, the ordinances of the city had not been alleged nor set up as a defense, and neither party to the cases had asked that they be charged. It is true that none of the parties objected to the charge of the ordinances, and no concern was made about it by anybody. Thus, even if it should be said that it was error for the Court on its own motion to charge the ordinances, it was a harmless error, and could not have affected the action of the jury. No question was made about the accident having occurred in the City of Charleston, and no evidence thereabout was taken, and that fact could not, in our judgment, have been impressed on the minds of the jury by the presiding Judge.

We think the Circuit Judge was in error in granting a new trial on that ground.

The second ground of appeal from Judge Grimball's order is, in our judgment, well taken. The original negligence was that of Arnold Rose, admittedly the agent and servant of the defendant, and admittedly in charge of the automobile which was in collision with the plaintiffs' car, which admittedly, was being used for the benefit and purposes of the defendant company, in transporting passengers for hire; and Arnold Rose, as he himself states, went back to The Cat and the Fiddle, place of entertainment, picked up a man whose name it seems was John Varn, who he knew, when he took him out there that afternoon, was drinking whiskey, and with whom he went to buy more whiskey, and who he knew, when he picked him up and put him in the front seat of the car with him, was under the influence of liquor.

He did not put him on the back seat, where he would probably put a man who he thought was so drunk that he would be asleep, but he put him on the front seat with him, and started to back the car out from the place where it was parked. He says that he was called to the telephone and left

the car to answer the call; that he was gone but a little while, and that when he came out, he saw the drunk man driving the car off.

There was the initial act of negligence which set in motion the chain of events which culminated in the collision with Mr. Pfaehler's car.

Rose seeks to create the impression that Varn was very drunk. That, of itself, condemns him. He left this drunk man in a position to take the car; in our judgment it passes comprehension that a man as drunk as Rose says Varn was, could get from the seat that Varn occupied, turn on the ignition, back the car out into the road, and drive it to Charleston. If, however, he was as drunk as Rose says he was, it but adds to the degree of Rose's negligence in making it possible for such a man to take charge of the car and drive it away. This was the negligence which was the proximate cause of the injuries.

We think that the following quotation from 22 Ruling Case Law 134, 135, 136 (Section 19 and part of Section 20) is applicable in this regard:

"(19)    *    *    *    It is universally agreed that the mere fact that the intervention of a responsible human being can be traced between the defendant's wrongful act and the injury complained of will not absolve him. On the contrary the general rule is that whoever does a wrongful act is answerable for all the consequences that may ensue in the ordinary course of events, though such consequences are immediately and directly brought about by an intervening cause, if such intervening cause was set in motion by the original wrongdoer, or was in reality only a condition on or through which the negligent act operated to produce the injurious result. Any number of causes and effects may intervene between the first wrongful cause and the final injurious consequence; and if they are such as might, with reasonable diligence have been foreseen, the last result, as well as the first, and every intermediate result is to be considered in law as the proximate result of the first wrongful cause. The question always is,

Was there any unbroken connection between the wrongful act and the injury, a continuous operation? Did the facts constitute a succession of events, so linked together as to make a natural whole, or was there some new and independent cause intervening between the wrong and the injury? The test is to be found in the probable injurious consequences which were to be anticipated, not in the number of subsequent events and agencies which might arise.

"(20) * * * The principles above set forth are well illustrated by the Squib case (*Scott v. Shepherd,* 2 W. Bl., 892, 1 Smith Leading Cas., 797), and the Negro Boy case [*Vandenburgh v. Truax,* 4 Denio, N. Y., 464, 47 Am. Dec., 268]. In neither did the injury immediately result from the defendant's act. But he set in motion a force which continued to operate until the injury was accomplished."

This Court has held, in the case of *Lawson v. Duncan,* 173 S. C., 34, 174 S. E., 495, 498, that:

" * * * If the driver of the truck, acting in the scope of his agency, was authorized to invite the plaintiff to ride on the truck, and the plaintiff got upon the truck in response to an invitation extended by the driver, the defendant would be liable to the plaintiff for any injury received, due to the negligence of the driver as a proximate cause thereof; * * * . In our opinion the trial judge was right in holding that the testimony required the submission of the case to the jury. * * *

"In our opinion a jury question was raised by the testimony on the issues involved."

In that case there was a question as to whether the driver of the truck was authorized to permit a person to ride thereon, and this Court held that a jury question was thus presented. Following the analogy of that case, we are of the opinion that the case at bar presents a jury question as to the negligence of Arnold Rose in leaving his passenger in the taxicab under the circumstances which have been described.

Another case which we also deem pertinent to the present issue is the Georgia case of *Nu Grape Bottling Company v. Knott*, 47 Ga. App., 539, 171 S. E., 151, 152, in which the Court of Appeals of that State used the following language: "The owner of an automobile who has intrusted it to another not his agent or servant, to be used by the latter for his own pleasure or amusement and not in the prosecution of the business of the owner, is responsible for damage proximately resulting from the negligent operation of the automobile by the person to whom it has been intrusted, where the latter is known to the owner to be a reckless and incompetent driver of an automobile, and legally incompetent by reason of his age to operate an automobile."

We think Judge Grimball was in error in reversing the judgment of the trial Court on that ground also.

Judgment reversed, and case remanded to the lower Court for entry of judgments upon the verdicts rendered in the trial Court.

Messrs. Associate Justices Baker, Fishburne, and Stukes, and Mr. Acting Associate Justice G. Dewey Oxner concur.

Mr. Associate Justice Baker (concurring): While the appellants are being permitted to recover upon an entirely different theory of negligence from that alleged in the complaint, yet no question as to variance between pleading and proof was raised in the Court of Common Pleas on the appeal from the judgment in the Civil and Criminal Court of Charleston, and therefore such question is not before this Court. For this reason, I am concurring in the opinion as prepared.