16257

FALCONER v. BEARD-LANEY, INC. *ET AL.*

(54 S. E. (2d) 904)

*Messrs. James L. Moss, Jr., and Wise, Whaley & McCutchen,* of Columbia, *for Appellants,*

*Messrs. R. B. Hildebrand, of York, and Edgar A. Brown* and *Jas. Julien Bush,* of Barnwell, *for Respondent,*

August 29, 1949.

OXNER, Justice.

This is an appeal from an order of the Circuit Court sustaining an award made by the Industrial Commission in favor of Betty Mae Falconer for the death of her father, Walter Falconer, who was employed by Beard-Laney, Inc., a corporation engaged in the transportation for hire of petroleum products. About 8:00 p. m. on Saturday evening, February 27, 1943, a truck driven by Falconer overturned as he was entering the town of York. The cargo of gasoline exploded and the truck caught on fire. Shortly thereafter he was found burned beyond recognition in the cab of the truck.

The employer and carrier claimed that at the time of the accident Falconer had deviated from his work and was on a purely personal mission. Accordingly, they denied that his death arose out of and in the course of his employment. As a further defense, it was contended that the right to compensation was barred by the following provision of the Workmen's Compensation Act (Section 7035-15 of the Code of 1942): "No compensation shall be payable if the injury or death was occasioned by the intoxication of the employee or by the wilful intention of the employee to in-

jure or kill himself or another. * * * The burden of proof shall be upon him who claims an exemption or forfeiture under this section."

Beard-Laney, Inc., maintained five terminals, one of which was located at or near Charlotte, N. C. The ODT (Office of Defense Transportation) regulations in effect at the time of the accident required it to keep a record of all trips made by each driver, including the mileage and gasoline consumed, and to use the nearest practicable route. The drivers were expected to comply with these requirements, although no specific directions were given them as to the route to be followed on any particular trip. All employees were given notice that drinking would not be allowed on the job.

Falconer had formerly been employed by a circus which had its winter quarters at York, South Carolina. About February 1, 1943, he was employed as a truck driver by the manager of Beard-Laney's Charlotte terminal. While so employed, he lived in Charlotte. He was required to transport gasoline and other petroleum products to various points in South Carolina. On February 27, 1943, he was directed to transport 4300 gallons of gasoline from Charlotte, N. C., to Rock Hill, S. C., for delivery at the bulk plant of the Marshall Oil Company. Similar trips between these two cities had been made by him on eight or ten previous occasions. He left the Charlotte terminal about 3 :00 p. m. and arrived at the plant at Marshall Oil Company about 6 :00 p. m. Finding the manager out, Falconer notified him by telephone that he had a load of gasoline for delivery. When the manager, a Mr. Kaler, arrived, Falconer was waiting and stated that he was in a hurry to get unloaded, as he "had a date in York". Kaler assisted in connecting the hose between the tank on the truck and the storage tanks underground and started the electric pump. It usually required about an hour to unload the quantity of gasoline being delivered. After the process of unloading was commenced,

Kaler went into his office to sit by the fire. Falconer followed and asked him if he ever took a drink. Kaler replied that he didn't but if he did, he wouldn't take one on the job. After stating that he had a dog in the truck (no dog was seen), Falconer walked to the cab of the truck where he took a drink from a bottle in the pocket. He again returned to the office and sat down. The office was well heated and in a few minutes Falconer became sick. He then left, got into the cab of the truck, shut the door and looked as if he was about to go to sleep. About that time Kaler left the office to go to a store about a hundred yards away for a coca-cola. Just after he entered the store Falconer, without cutting off the valves or unhooking the hose, drove away with part of the broken hose, from which gasoline was pouring, dangling on the pavement. This occurrence was immediately reported by Kaler to the police department. The process of unloading had continued for about fifteen or twenty minutes before Falconer left. A check at the station showed that only fifteen or sixteen hundred gallons of gasoline had been delivered.

The foregoing version of what transpired at the Marshall Oil Company plant was given by Kaler as a witness for appellants and appears to be uncontradicted. Kaler was of the opinion that Falconer was too drunk to drive the truck, stating that he was staggering around the plant before he left.

A witness for appellants testified that he whistled several times as the truck left the plant of the Marshall Oil Company, but the driver did not stop.

A witness for respondent testified that as the truck drove off from the Marshall Oil Company and proceeded up the street in front of him with the gas spurting from the hose, he blew his horn several times but the driver did not stop; that after driving three or four hundred feet he was able to overtake and drive alongside the truck, at which time he motioned to the driver to pull to the curb and as he did so, the witness's daughter told him his gas was running out;

that the driver then stopped, alighted from the cab and started toward the rear of the truck; that about this time the witness drove off and proceeded from Rock Hill in the direction of McConnellsville; that after traveling about half a mile, he observed the truck behind him; that it then followed him at a speed of about 25 miles an hour for a distance of five miles, at which time the witness turned off the road to go to his home and the truck proceeded towards McConnellsville; that the truck appeared to be driven in a normal manner and he observed nothing indicating that the driver was drinking.

Another witness for respondent testified that about 6:45 p. m., while sitting on the porch of her home on West Main Street in Rock Hill, she saw the truck pull over to the curb and stop, as described by the foregoing witness; that it stopped just in front of her house, about 40 feet from where she was sitting; that the driver got out of the cab, went to the rear of the truck, cut off the flow of gasoline, returned to the cab and immediately drove off; that several people were trying to dip gasoline which had run from the street into the gutter (gasoline was then being rationed); and that the driver did not stagger and she observed nothing which indicated that he was drinking.

A witness for appellants, who lived on the road between McConnellsville and York, testified that about sunset, while cutting wood, he saw the truck coming down the road with the right door open and "running pretty fast"; and that he observed "something like a hose by a piece of cable wire hanging behind it (the truck) and it looked like a ball of fire on the end of it. Every time it hit them joints (in the pavement) it made a fire." This witness further testified that as the truck passed his home, he hollered and motioned to the driver to stop, but apparently the driver, who was looking straight ahead, did not hear or see him; and that after passing his home and driving a short distance down the road, the driver stopped and closed the door.

The Police Department of the Town of York had been notified to look out for this truck and tanker. Several of the policemen patrolled the highway between York and Rock Hill but found no such vehicle. About 8:00 p. m., "just right at dark", they heard an explosion and found that the truck had overturned in a yard as it was entering the Town of York at a point where Highway No. 321, from Chester and McConnellsville to York, and Highway No. 5, from Rock Hill to York, and Main Street of the Town of York (continuation of Highways 5 and 321 after converging) form a "Y". A pint whiskey bottle, over half full, was found near the truck. As previously stated, Falconer was found burned beyond recognition in the cab of the truck. Two nearby residences were set on fire.

Respondent offered testimony to the effect that when driving a truck over 12 or 15 miles an hour, the curve at the scene of the accident is difficult to negotiate; that it is deceptive in appearance; that the road is improperly banked, causing vehicles in rounding the curve to tilt in the direction in which Falconer's truck overturned; and that about eight vehicles had turned over in a similar manner within the past four years.

An area resembling a triangle would be formed if lines were drawn between Charlotte, York and Rock Hill. The distance from Charlotte to Rock Hill along Highway No. 21 (a paved road) is 28 miles; from Rock Hill to York along Highway No. 5 (a paved road) is 15 miles; and from York to Charlotte along Highway No. 49 (a paved road) is 32 miles. If the highway between York and Rock Hill be regarded as the base of the above triangle, another triangle, adjacent to the one above described, would be formed if lines were drawn between York, McConnellsville and Rock Hill. The distance from Rock Hill to McConnellsville along Highway No. 322 (a surface treated road) is 13 miles; from McConnellsville to York along Highway No. 321 (a paved road) is 10 miles; and, as previously stated,

from York to Rock Hill, the base of both triangles, is 15 miles. It, therefore, appears that the most direct route from Rock Hill to Charlotte is along Highway No. 21, a distance of 28 miles. Falconer did not take this route in returning. Instead, he left Rock Hill in almost an opposite direction, drove toward McConnellsville and entered York from the McConnellsville Road. If he had returned to Charlotte by McConnellsville and York, he would have driven 55 miles, or almost twice the distance of the most direct route between Rock Hill and Charlotte.

From the testimony which we have summarized, the Industrial Commission concluded that at the time of the fatal accident Falconer was acting within the scope and course of his employment and that the proximate cause of the accident was the defective condition of the highway and not the intoxication of the driver. The Commission found that Falconer "was not so under the influence of the whiskey that he could not be reasonably expected to perform the duties of his employment." On appeal to the Circuit Court, it was held that the evidence was sufficient to reasonably warrant the factual conclusions made by the Commission. In doing so, the able trial Judge observed: "If I had been the hearing Commissioner, I would have found that Falconer was intoxicated or crazy—and there was no evidence that he was mentally unbalanced." He stated, however, that the question was one of fact for determination by the Industrial Commission and that he was not warranted in disturbing its findings. On this appeal appellants vigorously challenge both holdings made by the Court below. They contend that there is no evidence to sustain either of the conclusions made by the Industrial Commission.

We think the only reasonable inference warranted by the evidence is that the fatal accident occurred at a time when the deceased had deviated completely from his master's busineses and had gone on a personal errand. While there is some testimony of a general nature to the

effect that traffic on Highway No. 21 between Rock Hill and Charlotte is much heavier than on the road from Rock Hill to McConnellsville, and that truck drivers usually prefer a route where the traffic is light even though it may be somewhat longer than the most direct route, there is no evidence showing that any truck driver in going from Rock Hill to Charlotte has ever selected the route followed by Falconer or that there is any reasonable justification for doing so. "In deciding whether, in view of the longer way which the driver took, he was acting for a purpose of his own or was still engaged in his master's work, his intention is important." *Mathewson v. Edison Electric Illuminating Co.*, 232 Mass. 576, 122 N. E. 743, 744. The only intention disclosed by this record in going to York was to fill a "date". This purpose had not been accomplished when the accident occurred. An annotation on the subject under consideration will be found in 76 A. L. R., page 356. No case therein reviewed or any other that we have been able to find has upheld the right to compensation under circumstances similar to those presented in the instant case.

Respondent contends that the question is settled by our decision in *Carroll et al. v. Beard-Laney, Inc.*, 207 S. C. 339, 35 S. E. (2d) 425, 433. This was an action to recover damages against Beard-Laney, Inc., on account of the burning of a residence when Falconer's truck overturned. It was there held by a closely divided court that the question of whether at the time of the accident Falconer was acting within the scope of his employment was one of fact which was properly submitted to the jury. The case gave both the trial Judge and this Court much concern. We do not think that decision is in conflict with the conclusion herein expressed and shall endeavor to point out what we conceive to be the major points of distinction.

The evidence is not exactly the same in the two cases. It would unduly prolong this opinion to detail the differences in the testimony. It is clear from the order refusing a new

trial in the *Carroll case* that the trial Judge would have held as a matter of law that Falconer was not engaged at the time of the accident in or about the business of his master except for the testimony given by one Morrison. The significance which he attached to this testimony is shown by the excerpt from his order quoted in the majority opinion. This testimony was also deemed quite material by this Court. This witness did not testify in the instant case and no testimony of similar import was given by any other witness. There is also no evidence in the instant case of a cutoff on the McConnellsville Road which Falconer took or could have taken. Various statements contained in the majority opinion must be considered in the light of the evidence then before the Court.

Owing to the difference between the character of the proceeding in the *Carroll case* and that involved in the instant case, the burden of proof is not the same. Carroll was an innocent third party who sought to recover damages under the doctrine of respondent superior. This doctrine has its foundation or origin in the consideration of public policy, convenience, and justice. It was designed to protect innocent third parties from the acts of agents to whom the principal has entrusted the means of committing an injury. In actions of that kind, the well settled rule is, as stated in the minority opinion in the *Carroll case*: "Where one is found in the possession of the property of another, apparently using it in the business of such other, he is presumed to be the agent or servant of the owner and acting within the course of his employment." This statement is fully supported by our decisions. *Watson v. Kennedy et al.,* 180 S. C. 543, 186 S. E. 549, and cases therein cited. Also, see 5 Am. Jur., Automobiles, Sections 611 and 612. The proceeding in the instant case is by one who stands in the shoes of Falconer. The burden of supplying evidence from which the inference can be legitimately drawn that Falconer's death arose out of and in the course of his employment rests upon respondent. *Greene v. City of Bennettsville,* 197 S. C. 313,

15 S. E. (2d) 334; *Radcliffe v. Southern Aviation School et al.,* 209 S. C. 411, 40 S. E. (2d) 626. She has failed to sustain this burden of proof. The accident happened at a place wholly unrelated to Falconer's employment. The only explanation disclosed by the record for his being there is his declared intention of going to York to fill a "date". We do not have in the instant case the presumption that prevailed in the *Carroll case*. Without it, any inference that Falconer was on this highway either wholly or in part on his master's business must necessarily be based upon surmise or conjecture.

We are mindful of the fact that there is a presumption "that one charged with the performance of a duty and injured while performing such duty, or found injured at a place where his duty may have required him to be, is injured in the course of, and as a consequence of, the employment." *Owens v. Ocean Forest Club, Inc., et al.,* 196 S. C. 97, 12 S. E. (2d) 839, 841. But under the exceptional circumstances of the case before us we do not think respondent is entitled to the benefit of this presumption as she has failed to show that Falconer's death occurred at a place where duty may have required him to be. It is also true that compensation is not denied to an employee who is injured while doing a task assigned to him, even though he does it in a forbidden manner. *Johnson v. Merchants Fertilizer Co. et al.,* 198 S. C. 373, 17 S. E. (2d) 695. But compensation is denied when the employee, as here, has gone outside the scope of his employment.

We cannot escape the conclusion that there is no evidence reasonably warranting the inference that Falconer's death arose out of and in the course of his employment. We need not determine whether it can be said as a matter of law that his death was occasioned by his intoxication.

The judgment appealed from is reversed and case remanded for entry of judgment in favor of appellants.

BAKER, C. J., and FISHBURNE, STUKES and TAYLOR, JJ., concur.