Mrs. John B. McKINLEY, Appellant,

v.

Benjamin RAWLS, C. L. Fuller, d/b/a Superior Tire Company and Columbia Truck Terminal, Appellees.

No. 9204.

United States Court of Appeals
Fourth Circuit.

Argued Jan. 16, 1964.

Decided March 27, 1964.

Rehearing Denied June 12, 1964.

Thomas E. McCutchen, Columbia, S. C. (Whaley & McCutchen, Columbia, S. C., on brief), for appellant.

P. H. Nelson and E. W. Mullins, Columbia, S. C. (Nelson, Mullins, Grier & Scarborough, Columbia, S. C., on brief), for appellee.

Before SOBELOFF, Chief Judge, BRYAN, Circuit Judge, and BARKSDALE, District Judge.

ALBERT V. BRYAN, Circuit Judge.

An automobile personal injury action by the appellant, Mrs. John B. McKinley, against appellee Superior Tire Company, and its driver Benjamin Rawls, was dismissed by the District Court as to Superior on its motion for a directed verdict. The direction was rested on the finding that the collision of Superior's truck with the McKinley car happened while Rawls was driving the truck in deviation from the bounds of his employment. A verdict for $12,500 was returned against Rawls and he has not appealed. The evidence on the question of whether he was at the time of the accident acting within the ambit of his work—thereby rendering Superior liable —was so balanced, the appellant now urges, that it was an issue for the jury. We agree.

Superior was a retail tire business in Columbia, South Carolina, and Rawls its serviceman. His duties included the delivery and instalment of tires as they were sold. For this purpose he drove Superior's truck from time to time.

On May 19, 1962 Rawls was told to take two tires to State Farmer's Market, approximately 3 miles south of Columbia. Superior's place of business is on Gervais Street, which runs east and west. Five city blocks to the east of Superior's shop Gervais intersects with Assembly, a north-south street. State Farmer's Market can be reached by driving directly south on Assembly.

Leaving with the tires at noon, Rawls was not seen or heard of again until he collided with the McKinley car on Assembly about seven blocks *north* of the Gervais intersection. This was at 2:15 P.M. The tires for State Farmer's were still in the truck.

It thus appears that at the time of the collision Rawls was proceeding diametrically opposite to the direction of the destination to which he had been dispatched by Superior. He stated that he was on his way home to get lunch. His home was several blocks further *north* on Assembly Street and some distance to the west. The only reason he gave for this diversion was that he was without money to buy lunch where he customarily ate, near Superior's shop. He could not, or at least did not, account for his whereabouts during the more than two hours elapsing between his departure from Superior's until the accident.

On the issue of deviation, plaintiff McKinley first alludes to the testimony to the effect that Superior had on several occasions permitted Rawls to take the truck for his personal use. It is also pointed out that his working hours were from 8 o'clock in the morning until 6 or 6:30 in the afternoon; that he had no definite time for lunch; that he got lunch as he "could get time"; and that on the day of the accident he had not had lunch before he was sent to Farmer's Market. No definite instructions were given Rawls as to the route he should take in making the delivery or as to the time he was to return.

■■ As the jurisdiction of the District Court was based on diversity of citizenship, of course the law of South Carolina must be adopted in defining deviation. Federal law determines whether the evidence is sufficient to carry the issue of such deviation to the jury. Byrd v. Blue Ridge Rural Electric Cooperative, Inc., 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958); Crockett v. United States, 116 F.2d 646, 650 (4 Cir. 1940), cert. denied, 314 U.S. 619, 62 S.Ct. 57, 86 L.Ed. 498 (1941). In our opinion

the question of deviation was posed by the evidence and it was not so uncontroverted as to justify withdrawal of the issue from the jury. As there is no difference between the State and Federal criteria for the resolution of this issue, we cite the decisional law of South Carolina because of its immediate pertinency.

■ That the rule of respondeat superior does not impute liability to an employer for acts of his employee committed while not tending the employer's interests is, concededly, the law of South Carolina. In Adams v. South Carolina Power Company, 200 S.C. 438, 21 S.E. 2d 17, 18, 19 (1942) it was said:

> "The general rule of law [departure from the purposes of the engagement] applicable to cases of this kind is well understood. The difficulty arises upon its application to varying and diverse circumstances. The terms 'course of employment' and 'scope of authority,' are not susceptible of accurate definition. What acts are within the scope of employment can be determined by no fixed rule. The authority from the master is generally to be gathered from all the surrounding and attendant circumstances. In cases where the *deviation is slight and not unusual* the *Court* may, and often will, *as matter of law*, determine that the servant was still executing his master's business. So, too, *where the deviation is very marked and unusual*, as in Holder v. Haynes, 193 S.C. 176, 7 S.E.2d 833, the *Court* in like manner may determine that the servant was not on the master's business at all, but on his own. Cases *falling between these extremities* will be regarded as involving merely a question of fact, to be left to the *jury*." (Accent added.)

This standard for determination of who shall be the assayer of the evidence is the confirmed doctrine of South Carolina. Carroll v. Beard-Laney, Inc., 207 S.C. 339, 35 S.E.2d 425 (1945).

■ When the facts we have recounted, together with their fair and reasonable inferences, are taken in the light most favorable to the appellant, as they must be on consideration of the verdict directed against him, Atlantic Greyhound Corp. v. Hunt, 163 F.2d 117 (4 Cir.), cert. denied, 332 U.S. 815, 68 S.Ct. 154, 92 L.Ed. 392 (1947), we think the case is one "falling between [the] extremities".

Rawls was entrusted with the truck by Superior upon a mission of its business. At the time of the mishap, he was still in possession of Superior's truck and merchandise. Actually, his absence from the normal course of his employment was only slightly more than two hours. Whether this was an abandonment of his commission, considering the range of his services generally, is an ascertainment about which reasonable men, it seems to us, might disagree, thus sending it to the jury. 5 Moore's Federal Practice ¶ 50.02, p. 2314 n. 8 (2d ed.). An unsettling factor is the testimony of previous consent or acquiescence of Superior to Rawls' personal use of the truck. On the other hand, the reversal of his line of travel to the direction of his errand is a fact directly touching upon deviation. His hours of duty and his lunch time also contribute to make the question debatable. This is but to name examples of the controversial facts.

■ As the Court said in Carroll v. Beard-Laney, Inc., supra, 207 S.C. 339, 35 S.E.2d 425, 428, quoting from Restatement of the Law of Agency, Vol. 1, p. 530, 531:

> " 'The fact that the predominant motive of the servant is to benefit himself or a third person does not prevent the act from being within the scope of employment. If the purpose of serving the master's business actuates the servant to any appreciable extent, the master is subject to liability if the act otherwise is within the servce * * *' "

The Court also approved this statement borrowed from the North Dakota Supreme Court:

> " 'He who employs a servant and puts under his control an automobile must know, as every one knows, that it is not improbable that he will, on occasion, depart from strict instructions.' "

Finally, the answer to the inquiry of deviation under the evidence was at least in doubt. At that stage the ascertainment was for the jury. Carroll v. Beard-Laney, Inc., supra, 207 S.C. 339, 35 S.E. 2d 425; Hyde v. Southern Grocery Stores, Inc., 197 S.C. 263, 15 S.E.2d 353, 357 (1941). The submission would be guided by instructions with respect to the definition, effect, application and limitation of the rule of respondeat superior, leaving the jury to say whether the evidence invoked the principle or the exception.

"Scope of employment" has a different meaning when used in governing awards under workmen's compensation statutes and when used in regard to the liability of an employer to a third person by reason of an employee's tort. No exposition of the distinction made in South Carolina is required of us, for the Supreme Court of that State clearly distinguished the two in Falconer v. Beard-Laney, Inc., 215 S.C. 321, 54 S.E.2d 904, 908 (1949). This was a proceeding to obtain industrial compensation for the death of the driver involved in Carroll v. Beard-Laney, Inc., supra, 207 S.C. 339, 35 S.E. 2d 425.

For these reasons, the judgment in review must be vacated, the action remanded for a new trial. Superior has urged that in the event of reversal the new trial be limited to the issue of liability, with the Court accepting the verdict against Rawls as fixing the quantum of damages should liability be found against Superior. This we cannot grant. The appellant McKinley is entitled to a new trial independently of the judgment against Rawls. The plaintiff had the right originally, if she saw fit, to bring one action against Rawls and another against Superior. In those circumstances she could have procured judgments of differing amounts. No prejudice, therefore, results if we treat the present action from now on as against Superior only, to be retried against Superior as if separate actions had been commenced initially. Of course, there could be no duplication of satisfaction. The plaintiff would be paid only the larger amount if the verdicts differed.

Reversed and remanded.

## ON PETITION FOR REHEARING

The appellee, Superior Tire Company, petitions for a rehearing in respect to our denial of its request, on the initial hearing, that in the event of a retrial the amount of its liability should be fixed at the amount of damages found in the verdict against its employee, Rawls. It is now urged that the damages, if any, assessable against Superior should be *no more* than the sum already assessed against Rawls. In this the petition points out that the liability of Superior is derived exclusively through its responsibility for the acts of Rawls and that Superior was not an independent wrongdoer.

While we still do not think that the original argument can succeed—that the verdict against the employee should be the precise amount recoverable from employer Superior—there is authority for the new contention that the verdict against Superior could not *exceed* the sum awarded against Rawls. See Pinnix v. Griffin, 221 N.C. 348, 20 S.E.2d 366 (1942), 141 A.L.R. 1164 with annotation, 1170. However, as that question was not argued before us, and indeed may not arise in the second trial, we do not now resolve it.

But the original opinion will be modified by the disavowal of any intimation that a recovery against Superior could, under the law of South Carolina, be more than the award returned against the employee Rawls.

Petition denied but original opinion amended.