James Edward TUCKER et al.,
Plaintiffs,

v.

The UNITED STATES of America,
Defendant.

Civ. A. No. 74-40.

United States District Court,
D. South Carolina,
Columbia Division.

Dec. 10, 1974.

George E. Lewis, of Turner, Padget, Graham & Laney, Columbia, S. C., for plaintiffs.

John K. Grisso, U. S. Atty., Joel W. Collins, Jr., Asst. U. S. Atty., for defendant.

HEMPHILL, District Judge.

Defendant, United States of America, pursuant to Rule 56(b), Federal Rules of Civil Procedure, moves for summary judgment on the ground that this district court is without jurisdiction. Defendant alleges that, at the time the accident in question took place, the driver of defendant's vehicle was not acting within the scope of his employment, and, therefore, this court cannot find jurisdiction under the Federal Tort Claims Act. There is no dispute that there exists no genuine issue as to any material fact, and that, under the Federal Tort Claims. Act, if jurisdiction exists, trial would be to this court sitting without the aid of a jury.

In viewing this motion, the court has before it the affidavits of South Carolina Highway Patrolman B. J. Littleton, Sergeant Donald R. Kendall of the United States Army Military Police, and Specialist 5 Douglas A. LeDoux of the United States Army; and the depositions of Private Woodrow Wilson Clarke, Jr., and LTC Crispus C. Nix of the United States Army, along with the exhibits attached thereto.

STATEMENT OF FACTS

At the time of the incident in question, Woodrow Wilson Clarke, Jr., was a Private in the United States Army assigned to Company B–9–2. In order for him to qualify to operate certain military vehicles, he held a military driver's license, and he had on several prior occasions checked out vehicles in his capacity as a driver for his company.

Private Clarke has stated that within 45 to 50 minutes prior to presenting himself to the dispatcher to obtain a vehicle, he consumed two or three beers and a shot of bourbon.

On June 17, 1972, at approximately 7:30 p. m., Clarke went in uniform to the Transportation Motor Pool (TMP) at Fort Jackson, South Carolina, before Specialist 5 Douglas A. LeDoux, a dispatcher. Clarke had obtained a vehicle from Specialist LeDoux on one previous occasion. He now requested an International Scout truck saying that he was to provide transportation for some returning troops who he claimed were at the Columbia bus station. Clarke has admitted that the story he told the dispatcher was untrue. He actually planned to drive the vehicle downtown, abandon it, ride a bus to his sister's house, and go to see his mother in Balti-

more, Maryland. After talking with the dispatcher, Clarke stated that he had to lean a little bit closer in order to sign the paper before leaving with the vehicle and that at that point he was within three to four feet from the dispatcher.

Specialist LeDoux, the dispatcher, stated:

On the above occasion I did not detect any odor or smell of intoxicating beverages (beer, liquor, etc.) from Clarke's breath. Additionally, at that time, I did not observe any slurring of speech, staggering or anything else with respect to Clarke which would indicate that he recently drank intoxicating beverages.

In his deposition, Private Clarke did not state whether he had used, eaten, or drunk anything to cover the odor of alcohol, and he did not state an opinion on his state of sobriety at the time. He did not indicate whether or not, in his opinion, LeDoux could have detected that he had been drinking.

After obtaining the vehicle, Clarke drove to a pool hall on Washington Street in Columbia, South Carolina, where he shot pool and drank beer, and from there proceeded to drive the vehicle elsewhere intending to leave it closer to the post.

Clarke has stated that he was stopped by civilian police at approximately 10:00 p. m. on the evening of June 17, 1972, while lost and driving on Interstate Highway 20 looking for Fort Jackson. He also stated that perhaps the deputy sheriff who stopped him called the post, and was led to say that they were asked to send somebody out to pick him up in the government vehicle.

On the night of June 17–18, 1972, the Military Police at Fort Jackson, had no operational radio equipment with which they could have communicated directly with any civilian law enforcement agency. The Fort Jackson Provost Marshal, at that time, LTC Crispus C. Nix, has stated that not until at least October, 1972 did the Fort Jackson Military Police have that capability.

This fact is further corroborated by Sergeant Donald R. Kendall, who was the Fort Jackson MP desk sergeant on the night in question. He has stated that he received a telephone call from the highway patrol dispatcher concerning Private Clarke, but that it was an inquiry as to whether Clarke was absent without leave. Sergeant Kendall has stated that he was not told that Clarke was driving under the influence and he was not requested to dispatch a patrol car. Earlier in the evening Sergeant Kendall received two telephone calls reporting a GI racing about in the Prescott residential area. He stated that he called the state highway patrol and county police after each call and requested that they investigate, which they did. He did not dispatch a patrol car as this would be unauthorized absent a request from civilian police. Kendall stated that not until he learned of a later accident did he connect these calls to the call about Clarke.

Patrolman B. J. Littleton of the South Carolina Highway Patrol has stated that he came upon Clarke on the evening of June 17, 1972, after he had been stopped by a Richland County deputy sheriff. He inquired into the situation and called his dispatcher to have him telephone the military police to report the fact that Clarke had been picked up and to inquire what the military wanted to have done with the army vehicle. He has stated that he did not request that the army send assistance as he thought the situation was well under control.

Despite the discrepancies between the affidavits of Patrolman Littleton and Sergeant Kendall, they agree on the important point that no request was made for the military authorities to come out to pick up Private Clarke as alleged by plaintiffs. Thereafter, the deputy sheriff released Clarke back on the road to operate the vehicle. Clarke claims he became lost and was still trying to find his way back to the vicinity of Fort Jackson when an accident occurred at approximately 1:45 a. m. on June 18, 1972, on S. C. Highway #S–4901, Pres-

cott Road, near Columbia, South Carolina, involving an automobile owned by plaintiff, Carolina Leasing Corporation, and driven by plaintiff, James Edward Tucker, with plaintiff, Lynn Dennis, as a passenger, and the International Scout owned by the United States Army and driven at the time by Private Clarke.

## ISSUES

I. Plaintiffs contend in their first cause of action that Clarke was acting in the scope and course of his federal employment and that the alleged collision was caused by his driving on the wrong side of the road at a high rate of speed.

Defendant contends that at the time of the above-described accident, Private Clarke was not acting within the scope of his federal employment as an enlisted man with the United States Army, but was off post without authorization from his military superiors, contrary to Army Regulations and the Uniform Code of Military Justice. Furthermore, defendant contends that, at the time of the accident, Clarke had misappropriated the army vehicle and had taken it into Columbia and its surrounding area on purely personal business totally unrelated to his duties and responsibilities with the United States Army.

II. As a second cause of action, plaintiffs contend that the government vehicle was negligently entrusted to Clarke by the motor pool dispatcher, Specialist LeDoux. Plaintiffs' basis for this contention is the allegation that the dispatcher knew or should have known, that Private Clarke had been drinking alcoholic beverages.

Defendant submits that the material facts relating to this incident are not at issue and that these facts do not establish under applicable law that the vehicle was negligently entrusted to Private Clarke.

III. As a third cause of action, plaintiffs originally contended that military police, acting within the course and scope of their employment, were advised of Private Clarke's intoxicated condition and his operation of the vehicle and were requested to pick up both Private Clarke and his vehicle, but failed and refused to do so. When this motion for summary judgment came on for hearing on October 14, 1974, counsel for plaintiff announced that he did not oppose the motion as to the third cause of action. The motion as to that cause of action is therefore granted.

## ANALYSIS

### Motion for Summary Judgment

It is noted that the motion for summary judgment was filed by defendant on the eve of the commencement of the term of court at which this case was set for trial. The case, being under the Federal Tort Claims Act, is, of course, to be tried by the court without a jury. In this case there appears to be no great dispute as to the facts of the case but only as to the conclusions to be drawn therefrom. It was noted in the case of Tyndall v. United States, 295 F.Supp. 448, 451 (E.D.N.C.1969), as follows:

> We note at the outset that summary judgment is seldom an appropriate method by which federal courts should dispose of negligence cases since in the usual case material facts are in dispute. (Citing authorities). In White v. United States, 317 F.2d 13, 18 (4th Cir. 1963), a suit under the Federal Tort Claims Act, the applicable rule reiterated:
>
> * * * [summary judgment] should be granted only where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law. * * * And this is true even where there is no dispute as to the evidentiary facts in the case but only as to the conclusions to be drawn therefrom.

(Citing cases). Since juries are not available under the Tort Claims Act, 28 U.S.C.A. § 2402, summary judgment would seem to be particularly inappropriate when the question is

whether particular acts constitute negligence. If one thing is clear from the evidence submitted by the government in support of its motion, it is that further inquiry into the facts would be helpful in determining their legal consequence. Hence, the government's motion is denied.

The *Tyndall* case cited above also involved a drunken soldier who took a military vehicle without authority and while driving same was involved in a serious automobile accident resulting in his death as well as the death of others. The difference is that the alleged acts of negligence on the part of authorized government employees was in serious dispute because of the deaths of the alleged tortfeasor, the claimants, and other witnesses. In that regard it is different from the present situation in which the circumstances surrounding the alleged negligent acts are not disputed by the parties as described in the affidavits and depositions taken from the alleged tortfeasor, the claimants, and other witnesses. This, of course, presents quite a different situation as to a decision on the issue of foreseeability by this court.

For the reasons set forth hereinabove, there can be no prejudice to plaintiffs in dispensing with a recitation of the same undisputed facts at the trial of this matter. The legal conclusions to be drawn from those facts can be no better drawn after retaking the same testimony at an additional expense to the parties and burden to the court.

*First Cause of Action*

The jurisdictional framework within which the United States may be sued in tort is set forth in 28 U.S.C. § 1346(b):

Subject to the provisions of Chapter 171 of this title, the district courts, together with the United States District Court for the District of the Canal Zone, and the District Court of the Virgin Islands, shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death *caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment,* under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred. (Emphasis added.)

Accordingly, the question of whether or not a federal employee is acting within the scope of his employment at the time of the accident so as to make the United States liable in tort is one to be decided by applying the law of the place where the accident occurred. Williams v. United States, 350 U.S. 857, 76 S.Ct. 100, 100 L.Ed. 761 (1955); Cooner v. United States, 276 F.2d 220 (4th Cir. 1960); Patrick v. United States, 316 F.2d 9 (4th Cir. 1963). Since the accident which is the subject matter of the current suit occurred in Columbia, South Carolina, on June 18, 1972, this court necessarily applies the South Carolina law of respondeat superior to make this determination.

The opinion of Chief Justice Bonham in Holder v. Haynes, 193 S.C. 176, 7 S. E.2d 833 (1940),[1] states quite clearly the law of South Carolina as it applies in cases similar to the one at bar. In *Holder* the defendant, for purposes of convenience in his coal yard business, entrusted a delivery truck to his employee who garaged the truck at his home at night and on weekends. The driver was under strict orders not to use the truck at night except for coal delivery, and never on Sunday for any purpose. While attending to his personal

---

1. The rule is also well settled that the master is not responsible for the tort of his servant when done without his authority and not for the purpose of executing his orders, or while doing his work, but wholly for the servant's own purposes, and in pursuit of his private or personal ends. (Citations omitted.) 7 S.E.2d 833, 838.

business on Sunday in the employer's truck, the employee-driver was involved in a collision. The court pointedly held that the master or employer will not be responsible for the acts of its employees where the employee is not in the execution of the employer's business, but rather is engaged in the servant's own private business.

The state supreme court quoted from Knight v. Laurens Motor Car Co., 108 S.C. 179, 93 S.E. 869, 870 (1917) in support of its decision:

> When [the driver] took the car out, and went for the purposes stated, he did not pretend to be acting for the Motor Company; nor, in fact, was he so acting. On the contrary, he was acting for himself, and not at all for the Motor Company. . . . If that be so, the Motor Company is not liable for the result.

■■ Stated another way, the rule is that if the purpose of serving the master's business actuates the servant to any appreciable extent, the master will be liable. McKinley v. Rawls, 333 F.2d 198, 200 (4th Cir. 1964). Where the employee's deviation from the course of his other employment is very marked and unusual, the matter may be determined by the court rather than by submitting the question to the jury. Adams v. South Carolina Power Co., 200 S.C. 438, 21 S.E.2d 17 (1942); Bolin v. Bostic, 235 S.C. 319, 111 S.E.2d 557 (1959); McKinley v. Rawls, supra.

■■ A master's responsibility for its servant's torts cannot be extended beyond the limits of the master's work. If the servant is acting in the furtherance of his or her own work, or that of some other, the master is not answerable for the servant's negligence in the performance thereof. White v. Firestone Tire & Rubber Co., 90 F.2d 637 (4th Cir. 1937). The principle holds true notwithstanding the length of time involved in the deviation. Hancock v. Aiken Mills, 180 S.C. 93, 185 S.E. 188 (1936); Lane v. Modern Music, Inc., 244 S.C. 299, 136 S.E.2d 713, 716 (1964).

■ In the instant case, the evidence is clear that Private Clarke procured a military vehicle by falsely and fraudulently claiming that he would be on military business. He clearly conducted no military business whatsoever and never intended to do so. Private Clarke admitted that such was the case. There is no evidence that Private Clarke was acting in furtherance of the government's work. Therefore, defendant's motion for summary judgment on the first cause of action is granted.

### Second Cause of Action

■ As to plaintiffs' second cause of action, the court notes initially that, even if it could be found that the vehicle dispatcher at the Fort Jackson motor pool was negligent, such negligence cannot be said to be the proximate cause of plaintiffs' injuries and losses.

The South Carolina Supreme Court in Driggers v. City of Florence, 190 S.C. 309, 2 S.E.2d 790, 791 (1939), stated:

> A prior and remote cause cannot be made the basis of an action if such remote cause did nothing more than furnish the condition or give rise to the occasion by which the injury was made possible, if there intervened between such prior or remote cause and the injury a distinct, successive, unrelated and efficient cause of the injury, even though such injury would not have happened but for such condition or occasion.

In the instant case there intervened between Private Clarke's obtaining the vehicle one or more unrelated and efficient causes of the alleged accident.

The law of negligent entrustment in South Carolina is summarized in the decisions of Pfaehler v. Ten Cent Taxi Co., 198 S.C. 476, 18 S.E.2d 331 (1942); Howle v. McDaniel, 232 S.C. 125, 101 S.E.2d 255 (1957), and Wineglass v. McMinn, 235 S.C. 537, 112 S.E.2d 652 (1960).

In *Pfaehler* a taxi-cab driver picked up a fare at a tavern. The passenger who was obviously very drunk drove off

with the taxi when the driver, leaving the keys in the ignition, stopped and left the vehicle to answer a telephone call. The important factor noted by the state supreme court was that the cab driver *knew* his fare was very drunk. The cab driver testified at the trial that his fare was so drunk he had to help him get into the taxi and that the man was almost unconscious.

In *Howle* it was stated as *obiter dicta* that a bailor may be negligent when he entrusts an automobile to one whom he *knows* to be so reckless or incompetent that danger to third persons would be a reasonable probable consequence. The state supreme court in that case overturned a directed verdict against plaintiff at trial and remanded the case for a new trial.

In *Wineglass* a deliveryman left an inexperienced unlicensed boy to attend his parked delivery truck. The keys had been left in the ignition. A nearby car owner asked the boy to move the car and in so doing the boy hit plaintiff's car. There, the court found that the intervening wrong, i. e., the boy's attempt to move the truck, should have been foreseen by the deliveryman in the exercise of due care. Thus, the original negligence remained active as a proximate cause of the damage.

The holding of the Sixth Circuit Court of Appeals in Mider v. United States, 322 F.2d 193 (6th Cir. 1963) supports a ruling for defendant's motion for summary judgment against plaintiffs' negligent entrustment cause of action. That case deals with intervening causes. *Mider*, supra, at 196, includes this statement:

> No one, not even an officer of the highest rank in the Armed Forces, may subject the government to liability for injuries resulting from the dispatch of a motor vehicle, for an unofficial and unauthorized purpose, to a member of the Armed Forces not acting within the scope of his employment, or line of duty.

In the instant case, there is no evidence that the dispatcher actually *knew* that Private Clarke was drinking. Two or three beers and a shot taken within 45 to 50 minutes before the meeting apparently did not produce any noticeable effects on Clarke. The dispatcher checked the driver's license of Private Clarke and found it in order. There is no evidence upon which it can be concluded that the dispatcher *knew* Clarke was drunk, reckless, or incompetent.

Even if the disputed issue of fact, that the dispatcher *should have known* that Private Clarke was drinking, were resolved in plaintiffs' favor, such a finding would be insufficient to impose vicarious liability on defendant because any such negligent entrustment was the remote cause of the accident while Private Clarke's driving on the wrong side of the road at a high speed several hours later was the proximate cause of the accident. Private Clarke's negligent conduct was not a foreseeable result of the dispatcher's allegedly negligent entrustment.

In *Mider*, supra, a military dispatcher entrusted a vehicle to a friend, Abner, and accompanied him on a bar-hopping binge. Later, there was an accident. The district court found, at 201 F.Supp. 844, 845 (S.D.Ohio 1961), that:

> [D]efendant was negligent in dispatching the vehicle in the manner and under the circumstances prevailing, and that the collision was a reasonably foreseeable result thereof.

The Sixth Circuit considered the same precise issue now before this court and conclusively reversed the district court's holding. It held in 322 F.2d 193, at 198:

> *It is the wrongful act, causing the injury, for which the government is liable, when that act is performed while the wrongdoer is acting in an official capacity, within the scope of his employment or in the line of duty.*
>
> *Here the wrongful act, proximately causing the injury, was driving the*

*staff car on the wrong side of the road into plaintiff's car.* The staff car was not being used in an official capacity, nor was it being driven within the scope of Abner's employment or in the line of duty.

*We are unable to concur in the view that the collision was the reasonably foreseeable result of Sergeant Terloin's dispatch of the car, several hours before the accident.* Under the circumstances of this case, plaintiff suffered grievous injuries and damages from wrongful conduct of members of the Armed Forces, using a government-owned vehicle. But, the record in this case reveals no way in which that wrong can be righted by resort to the Federal Tort Claims Act. (Emphasis added.)

Therefore, this court finds, as a matter of law, that liability cannot be predicated upon the United States for the negligent dispatch of a vehicle where the accident occurred several hours after the dispatch and where the driver was not within the scope of his employment. In *Mider* the dispatcher of the vehicle accompanied the driver on the bar-hopping binge and *knew* that the driver was drunk. Nonetheless, the negligent dispatch was held by the Court of Appeals not to be the proximate cause of the accident.

The *Mider* decision is in point with the facts in the instant case. Applying the logic of that case to the facts herein, it must be concluded that the wrongful injury was proximately caused by driving the International Scout vehicle on the wrong side of the road into plaintiffs' car. Therefore, even if Specialist LeDoux had known, as did the dispatcher in *Mider*, that the driver would be drinking and using the vehicle for unauthorized purposes, there could be no remedy under the Federal Tort Claims Act.[2]

## CONCLUSIONS

I. As to plaintiffs' first cause of action, at the time of the accident in question, the tortfeasor, Private Clarke, was not acting within the scope of his federal employment as an enlisted man with the United States Army, but was off post without authorization from his military superiors, contrary to Army Regulations and the Uniform Code of Military Justice.

II. As to plaintiffs' second cause of action, the dispatcher did not know that Private Clarke had been drinking alcoholic beverages and, even if the dispatcher should have known, Specialist LeDoux's negligent entrustment of the vehicle to Private Clarke was only a remote cause of the accident while Private Clarke's drunk driving of the vehicle on the wrong side of the road at a high rate of speed was the proximate cause of the accident.

III. As to plaintiffs' third cause of action, it is dismissed by consent of the parties.

Wherefore, it is ordered, adjudged, and decreed that defendant's motion for summary judgment, pursuant to Rule

---

2. If some other act or omission may be said to be the proximate cause of the accident, it would logically have to be the dereliction of duty by the deputy sheriff who released Private Clarke back on the road to operate a vehicle when he was obviously drunk and perhaps still drinking. If plaintiffs have a cause of action against anyone other than Private Clarke, it would be the Richland County Sheriff.

The South Carolina Code of Laws provides that a deputy sheriff shall use every means to prevent, detect, arrest and prosecute for drunkenness (Title 53, Section 86). Both deputies and sheriffs are required to post bond " . . . conditioned for the faithful performance of his duties and for the payment to the county and to any person of all such damages as they or any of them may sustain by reason of his malfeasance in office or abuse of discretion. . ." (Title 53, Section 77; Title 53, Section 54).

The code goes on to provide that any sheriff shall be liable to be proceeded against in any court of record (Title 53, Section 212), and "[t]he sheriff shall in all cases be answerable for neglect of duty or misconduct in office of any deputy." (Title 53 Section 71).

56(b), against plaintiffs' first, second, and third causes of action is granted because this federal district court lacks jurisdiction under the Federal Tort Claims Act, 28 U.S.C. § 1346(b).

And it is so ordered.