Robert B. MIDER, Plaintiff-Appellee,

v.

UNITED STATES of America,
Defendant-Appellant.

No. 15064.

United States Court of Appeals
Sixth Circuit.

Sept. 10, 1963.

John W. Douglas, Asst. Atty. Gen., Department of Justice, Washington, D. C., Joseph D. Guilfoyle, Acting Asst. Atty. Gen., Morton Hollander, Edward A. Groobert, Attorneys, Department of Justice, Washington, D. C., Joseph P. Kinneary, U. S. Atty., Cincinnati, Ohio, on brief, for appellant.

Clement J. DeMichelis, Cincinnati, Ohio, McCaslin, Imbus & McCaslin, Cincinnati, Ohio, on brief, for appellee.

Before MILLER and O'SULLIVAN, Circuit Judges, and McALLISTER, Senior Circuit Judge.

McALLISTER, Senior Circuit Judge.

Plaintiff-appellee, Robert B. Mider, brought an action against the United States of America, under the Federal Tort Claims Act, to recover damages sustained when, about 11 o'clock, P. M., on the night of September 15, 1956, an Air Force Staff car was driven by a member of the Armed Forces across a yellow center-line on a highway at Amelia, Ohio, and crashed into appellee's car, causing him injuries and damages, for which the District Court entered a judgment in appellee's favor in the amount of $6,848.39.

There is no dispute as to the facts in the case. The Air Force car was dispatched for off-base transportation by Sergeant Terloin, in charge of the Motor Pool at the Clinton County Air Force Base, Wilmington, Ohio. Terloin had authority to make such dispatch, because of the absence of the superior officers in charge, at that time. The assignment for such transportation was made at the request of Airman Abner. Terloin dispatched the car to himself, and, with Abner in the car with him, drove through the gate of the Air Force Base. He did not stop at the gate but the Air Policeman in charge at the gate waved them on and did not ask for any "ticket." Apparently, such a ticket is used as evidence of authorization for dispatch of the car.

There is proof in the case that George Bradshaw, a driver at the Motor Pool, heard a conversation in which Abner asked Terloin for transportation in order to see his lawyer about some papers. Abner had actually commenced divorce proceedings and he was the father of a child. Donald Smart, a bus driver at the Motor Pool, noticed Abner shaving on the morning of the accident, and, in response to Smart's questions, Abner stated that he was going home and that he had permission to do so from "the old man." Bradshaw, on later examination, testified that he had heard Abner tell Sergeant Terloin that the lieutenant "had authorized the trip for him, for the staff car to take him to his home." On further examination, Smart testified that he heard Abner "ask Sergeant Terloin for transportation for a staff car to take him home to see his lawyer" and that the "lieutenant had authorized it." Lieutenant Warren M. Wenner III testified that he was responsible for the administration and management of the Motor Pool in question, and that on that day, he did not give anyone authority to drive the staff car to Amelia, Ohio; that the Motor Pool did not furnish transportation for other than official business; and that the document governing such official authorization was: AFM 77–1, Chapter 3. Arthur M. Leigh, Motor Transportation Officer and Motor Vehicle Maintenance Officer at the Base, testified that it was not normal procedure for Sergeant Terloin to be the operator of an off-base run, but in many cases, due to the lack of personnel, it was necessary to send him on such a trip; that Terloin did have the authority to authorize any trips; that he had authority to authorize an off-base trip regardless of what the trip was for.

Terloin, being in the Air Force, was not available as a witness. James Abner, for whom the car was dispatched for the trip to his home in Bethel, Ohio, made a sworn statement which both parties to the case agreed to accept in lieu of his testimony.

From the statement of Abner, and from other undisputed evidence, it appears that after Sergeant Terloin and Abner set out from the Base in the staff car, about four o'clock in the afternoon,

and started to drive to Bethel, Ohio, the home of Abner, they stopped shortly afterward at a bar where they each had three or four beers. From there, they went on to another bar, where again each had three or four beers. They proceeded on to a tavern, called the Log Cabin, where they each had five or six more beers. From there, they continued their adventure to a place where they played slot machines and each had another four beers. They then went to the home of Abner's sister in Bethel, Ohio, where they changed to civilian clothes, had a sandwich and two more beers. In the Mount Holly Tavern in Bethel, they spent three or four hours and during that time were drinking beer and whiskey. That was the last that Abner remembered until he woke up in the hospital. At the time of the crash, he was found "under the wheel." He stated that he believed he was drunk at the time of the accident.

This Bacchic pilgrimage would have been comic, in a sense, if death had not so nearly brushed the three people involved. As it was, Abner suffered injuries and was rushed to the hospital; and appellee Mider suffered the injuries and damages for which the judgment was rendered.

The District Court, in its opinion, granting judgment in favor of plaintiff, stated:

"It is our specific finding as a matter of fact that the motor pool sergeant, who was vested with apparent authority to dispatch vehicles under the existing conditions, was acting within the scope of his employment (or 'in line of duty') in ordering the dispatch here in question. * * *

"The stipulations fail to disclose that the vehicle was dispatched for any proper purpose, and on the contrary indicate that the probable reason of its use was the accomplishment of a personal purpose; this conclusion is supported by evidence of the events of the ensuing hours, which included, for example, a visit to a private residence for a changing of clothes, and by the fact that the collision occurred some fifty-five miles from the base at a point near where one of the men was stated to have had personal business. *We conclude that the defendant was negligent in dispatching the vehicle in the manner and under the circumstances prevailing, and that the collision was a reasonably foreseeable result thereof.*" (Emphasis supplied.)

It is the claim of the government that Sergeant Terloin was not acting within the scope of his employment when he authorized the dispatch of the motor vehicle for the prohibited or unauthorized purpose of leaving the Base for a weekend at Abner's home in Bethel, Ohio; and that the motor vehicle was not being operated by Abner, within the scope of his office or employment, or in the line of duty, at the time of the collision, and that, therefore, the government is not liable for the injuries and damages resulting from such use of the staff car.

The relevant statutes are Sections of the reenactment of the Federal Tort Claims Act, 62 Stat. 933, 982, 983, in which the government consents to suit against itself for tort claims, and are found in the Code under Title 28 U.S.C.A. §§ 1346(b), 2674 and 2671, which, insofar as here applicable, provide:

"Subject to the provisions of chapter 171 of this title, the district courts * * * shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." (Title 28 U.S.C.A. § 1346(b))

"The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages." (Title 28 U.S. C.A. § 2674)

"As used in this chapter and sections 1346(b) and 2401(b) of this title, the term—

\* \* \* \* \* \*

" 'Employee of the government' includes officers or employees of any federal agency, members of the military or naval forces of the United States, and persons acting on behalf of a federal agency in an official capacity, temporarily or permanently in the service of the United States, whether with or without compensation.

" 'Acting within the scope of his office or employment', in the case of a member of the military or naval forces of the United States, means acting in line of duty." (Title 28 U.S.C.A. § 2671)

The provisions of the Air Force Manual controlling the use of motor vehicles, insofar as here applicable, are set forth in the margin.[1]

██ Under the Federal Tort Claims Act, the government would not be liable for personal injury or loss of property caused by the wrongful act of a member of the Armed Forces, while acting outside the scope of his authority, and in an unofficial capacity.

While Sergeant Terloin may have had the authority to authorize the dispatch of motor vehicles from the Base in the absence of his superior officers, he did not have the right to dispatch the car to himself or to another for the wholly unauthorized purpose disclosed by the record; and the government is not liable for damages resulting from a collision of one of its motor vehicles while being driven by an intoxicated member of the Armed Forces, when he is acting beyond the scope of his employment and not in the line of duty. No one, not even an officer of the highest rank in the Armed Forces, may subject the government to liability for injuries resulting from the dispatch of a motor vehicle, for an unofficial and unauthorized purpose, to a member of

---

1. Criteria for Use of Vehicles
"a. General, Improved administration and management of the motor vehicle fleet must be a constant aim in order that maximum utilization from the minimum number of vehicles may be achieved. Particular attention must be given to the availability of adequate commercial facilities and to the furnishing of vehicles for official purpose only.
"b. Official Purpose:
"(1) What constitutes 'official purposes' is a matter of administrative discretion to be exercised within applicable laws (25 Comp.Gen. 844). Transportation is never an end in itself—it is always incidental to the accomplishment of an objective; and when it is an authorized activity, such transportation as is essential to the successful attainment of the objective is for official purposes. The rule may be stated that where transportation is essential to the successful operation of any activity the Air Force is authorized to conduct, it is for an official purpose.
\* \* \* \* \* \* \*

"c. Domicile-to-Duty Use:
"(1) It is a general rule that transportation to and from work is a personal expense (19 Com.Gen. 836; 23 Com. Gen. 352; Sec. 16a Act of 2 August 1946, 60 Stat. 810; 5 U.S.C. § 78). However, the primary purpose of the rule is to prevent the use of Government-owned vehicles for personal convenience (25 Comp. Gen. 844), and does not preclude transportation between the place of residence and place of work where it is in the interests of the Government.
"(2) Public Law 600 states that 'official purposes' shall not include the transportation of officers and employees between their domiciles and places of employment except in cases of medical officers on outpatient medical service, and except in case of officers and employees engaged in field work the character of duties makes such transportation necessary and then only as to such latter cases when the same is approved by the head of the department concerned."

the Armed Forces not acting within the scope of his employment, or line of duty. It is not suggested by the plaintiff-appellee that the motor vehicle was being used for an authorized purpose, or was being driven, or was being used, by a member, or members, of the Armed Forces in the scope of employment or line of duty, at the time of the collision.

■ To hold a master vicariously liable for the torts of his servants, the servant at the time of the negligent act, must be conducting his master's affairs. "The master's responsibility cannot be extended beyond the limits of the master's work." Standard Oil Co. v. Anderson, 212 U.S. 215, 221, 29 S.Ct. 252, 254, 53 L.Ed. 480, quoted in Balinovic v. Evening Star Newspaper Co., 72 App.D.C. 176, 113 F.2d 505, 506. "The ground of liability of the master for the negligent act of the servant is that the servant is conducting the master's affairs * * *." United States v. Eleazer, 177 F.2d 914, 916 (C.A. 4). An employee is not engaged in his master's business when he has taken his employer's vehicle for purely personal reasons. Johnson v. Esso Standard Oil Co., 211 F.2d 397, 399, 400 (C.A. 5). The Federal Tort Claims Act grants jurisdiction and permits recovery against the United States only under the circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred. 28 U.S.C.A. §§ 1346(b) and 2674. The United States would be liable for the negligent acts of its servants, therefore, only in circumstances where a private person would be liable for such negligent acts of its servants under the doctrine of respondeat superior of the state where the negligence occurred.

■ This case is, in accordance with the provisions of the Federal Tort Claims Act, governed by the Ohio doctrine of respondeat superior, since the collision here in question occurred in that state. In Ohio, there can be no vicarious liability for a servant's torts if the negligent act occurs when the servant, although using his master's vehicle, is off duty or is on a personal excursion for his own purposes. Under the doctrine of respondeat superior, the test of a principal's liability is not whether a given act was performed during the existence of the agent's employment, but whether such act was done by the agent while engaged in the service of, and while acting for the principal, in the prosecution of the latter's business. Senn v. Lackner, 157 Ohio St. 206, 105 N.E.2d 49; Lima Railway Co. v. Little, 67 Ohio St. 91, 65 N.E. 861. Where a servant, going on a mission of his own, makes a clear and complete deviation from the scope of his master's business, under the doctrine of respondeat superior, the master is not responsible for any acts of the servant during the period of such duration. Thornberry v. Oyler Bros., 164 Ohio St. 395, 131 N.E.2d 383. The servant must be acting within the scope of his employment and pursuant to the express or implied authority of the master at the time of the tort. Miller v. Metropolitan Life Ins. Co., 134 Ohio St. 289, 16 N.E.2d 447. The owner of an automobile is not liable in an action for injuries to a third person caused by the negligence of an employee in the operation of the vehicle, unless it is proven that the employee, at the time, was engaged upon his employer's business and acting within the scope of his employment. White Oak Coal Co. v. Rivoux, 88 Ohio St. 18, 102 N.E. 302, 46 L.R.A.,N.S., 1091; Gulla v. Strauss, 154 Ohio St. 193, 93 N.E.2d 662.

■ It is clear that Abner and Terloin were not using the Air Force vehicle at the time of the collision in furtherance of government business. They took the government vehicle to go to Abner's home for an entirely personal weekend frolic, and became intoxicated on the way, and, before the collision which occurred fifty-five miles from the Base. The government cannot be held liable for Abner's negligent operation of the vehicle since neither he nor Terloin were acting within the scope of their employment at the time of the collision, and under the Ohio doctrine of respondeat superior, the government, if a private per-

son, would not be liable to the plaintiff under the circumstances of this case.

The trial court held that the government was liable for damage arising out of the collision on the theory that Terloin was vested with apparent authority to dispatch vehicles under the existing conditions; that in dispatching the staff car to Abner and himself, he was acting within the scope of his employment; that the government was negligent in dispatching the vehicle in the manner and under the circumstances prevailing; and that the collision was a reasonably foreseeable result thereof. It is true that Terloin had the authority to dispatch the motor vehicle in this case, but not for the purpose for which it was dispatched. The trial court held that it was unnecessary to determine whether Abner, the driver, was acting within the scope of his employment at the time of the accident because the court concluded that the case could be decided on the basis of the dispatching of the vehicle.

The damages for which the government is liable, under the Federal Tort Claims Act, is for personal injury or loss of property caused by the negligent or wrongful act of any employee of the government, while acting within the scope of his office, employment, or line of duty, under circumstances when the government, if a private person, would be liable in accordance with the law of the place where the act occurred. It is the wrongful act, causing the injury, for which the government is liable, when that act is performed while the wrongdoer is acting in an official capacity, within the scope of his employment or in line of duty.

Here the wrongful act, proximately causing the injury, was driving the staff car on the wrong side of the road into plaintiff's car. The staff car was not being used in an official capacity, nor was it being driven within the scope of Abner's employment or in line of duty.

We are unable to concur in the view that the collision was the reasonably foreseeable result of Sergeant Terloin's dispatch of the car, several hours before the accident. Under the circumstances of this case, plaintiff suffered grievous injuries and damages from wrongful conduct of members of the Armed Forces, using a government-owned vehicle. But, the record in this case reveals no way in which that wrong can be righted by resort to the Federal Tort Claims Act.

In accordance with the foregoing, the judgment of the District Court is reversed.