Donald L. **TYNDALL**
v.
UNITED STATES of America.

Lisa Michelle **TYNDALL**, a minor, etc.
v.
UNITED STATES of America.

Kimberly Fay **TYNDALL,** a minor, etc.
v.
UNITED STATES of America.

Donald L. **TYNDALL**, Administrator, etc.
v.
UNITED STATES of America.

Bruce Edward **TYNDALL,** a minor, etc.
v.
UNITED STATES of America.
Civ. A. Nos. 1294–1298.

United States District Court
E. D. North Carolina,
Wilmington Division.
Dec. 2, 1969.

---

Henry L. Stevens, III, Russell J. Lanier, Jr., Renansville, John R. Newton, Wilmington, N. C., for plaintiffs.

Robert H. Cowen, U.S. Atty., W. Arnold Smith, Asst. U.S. Atty., Raleigh, N. C., for defendant.

### MEMORANDUM OPINION

OREN R. LEWIS, District Judge Designate.

These cases were brought under the Federal Tort Claims Act against the United States to recover for the wrongful death of Mrs. Elizabeth M. Tyndall and injuries to Donald L. Tyndall and his three children resulting from a head-on collision between a United States Marine Corps truck and an automobile then being driven by Donald L. Tyndall.

Most of the facts were stipulated— Some evidence was heard by the Court.

There is no need here to rerecord the stipulation.[1]

Suffice it to say, an intoxicated Marine private without authority took an unlocked government truck from the Marine Corps Air Facility near Jacksonville, North Carolina. He was some thirty miles from the base, on his way to his home in Connecticut, when he collided with the Tyndall automobile. The accident was solely caused by the Marine's negligence. The Marine and Mrs. Tyndall were killed. Mr. Tyndall and three minor children were seriously injured.

On the night in question the Marine private had been off duty since 4:30 p. m.—He had been drinking heavily—He offered to bet he could drive to Connecticut and back by the following morning —he got no takers—He then went to the Supply Station where he met one of his buddies, a Corporal Grunden, the duty clerk, who was then leaving to make some deliveries on the base in the ill-fated truck—The private rode with him. They talked about the private's proposed trip to Connecticut—The corporal talked him out of it by stating that his car would not make it and he would only get himself in trouble. He told him to give him the keys (his car was parked near his barracks) thinking that would keep him from going. The private gave them to him.

After making his deliveries the corporal refueled the truck and parked it on the lot next to the Supply Station—He does not remember leaving the keys in the truck but he may have—He usually left the keys on the sign-out book which was kept on the front counter at the Supply Station. The Marine private then left—He was last seen by the corporal walking towards his barracks.

The private was later seen by a sergeant leaving his barracks with a vodka bottle in his hand—He asked him where he was going—He told the sergeant he was going home by government transportation. The private then went to the Supply Station and told the corporal he was going to sleep in the truck because he had already put his clothes out on his bed for the morning inspection.

The sentries at the main gate did not see the ill-fated truck leave the base.

Marine Corps regulations require special authorization by the officer of the day before Marine Corps automobiles may be used for official off-station trips after 4:30 p. m. No such authorization was given on the night of the accident. The corporal had no authority to authorize the use of the truck. (There was no evidence that he had.)

Marine Corps regulations also provide that

"Unattended vehicles will be secured, engines locked and keys removed, and brakes will be effectively set."

The plaintiffs, relying upon the doctrine of res ipsa loquitur, insist that someone must have been negligent in permitting the Marine private to operate the government truck in his drunken condition.

■ This contention must fall because there is no evidence that anyone permitted the Marine private to drive the truck on the day in question, either on or off the military base. Clearly, the private was on a frolic of his own at the time of the accident. His use of the truck was unauthorized and for a personal mission. See Mider v. United States, 322 F.2d 193 (6th Cir. 1963).

■ Next the plaintiffs argue—Had not the corporal left the keys in the truck the accident could not have happened; therefore the Government is liable. The fallacy of this argument is —There is no statute in North Carolina prohibiting the leaving of keys in an unlocked car, see Williams v. Mickens, 247 N.C. 262, 100 S.E.2d 511 (1957); and even if there were, it would have no application to the Marine Corps base. See

---

1. The stipulation was recorded in some detail in Tyndall v. United States, 295 F.Supp. 448 (E.D.N.C.1969).

Herring v. Humphrey, 254 N.C. 741, 119 S.E.2d 913, 91 A.L.R.2d 1320 (1961).

See also Stone v. Bethea, 251 S.C. 157, 161 S.E.2d 171 (1968), a state having a key statute. That court in a somewhat similar case held:

"* * * When the negligence appears merely to have brought about a condition of affairs, or a situation in which another and entirely independent and efficient agency intervenes to cause the injury, the latter is to be deemed the direct or proximate cause, and the former only the indirect or remote cause."

Finally, the plaintiffs argue that Corporal Grunden was negligent per se in not securing the truck as required by Marine Corps regulations—that this negligence was the proximate cause of the accident and that the Government must be held liable under the applicable rules of respondeat superior.

 The only negligence of legal importance is negligence which proximately causes or contributes to the injury. See McNair v. Richardson, 244 N.C. 65, 92 S.E.2d 459 (1956)—A requisite for the finding of proximate cause is the foreseeability of the injury. See Pinyan v. Settle, 263 N.C. 578, 139 S.E.2d 863 (1965). Whether the intervening act of the Marine private was the proximate cause of the plaintiffs' injuries and sufficient to excuse Corporal Grunden's lack of care depends on foreseeability.

 The test is not to be found merely in the degree of negligence of the intervening agency, but in its character—whether it is of such an extraordinary nature as to be unforeseeable. A person is bound to foresee only those consequences that naturally and probably flow from his injuries. See Rattley v. Powell, 223 N.C. 134, 25 S.E.2d 448 (1943).

 The Government has been found guilty in some cases where military personnel removed explosives from the Army base contrary to orders, on the theory that armed forces regulations dealing with firearms or explosives are, among other things, for the purpose of protecting the public. See Williams v. United States, 352 F.2d 477 (5th Cir. 1965). No such purpose is apparent where as here, the regulation concerns securing unattended vehicles. The more obvious reason for the Marine Corps regulations providing for the securing of vehicles is to prevent the loss of government property through theft or unauthorized use. To conclude that such a regulation may fairly be interpreted as serving to protect the civilian motorist from a drunk-driving soldier is difficult. See Tyndall v. United States, 295 F. Supp. 448 (1969). An automobile is not per se a dangerous instrumentality. The armed forces are not required to use a greater degree of care in securing their parked automobiles than others are required to use—neither is liable for the torts committed by unauthorized users, on personal missions.

 Even though the corporal may have been negligent in failing to remove the keys from the parked truck in this case, that negligence was not the proximate cause of the plaintiffs' injuries. The injuries complained of were solely caused by the negligence of the Marine private who was then on a frolic of his own.

Farrell v. Universal Garage Company, 179 N.C. 389, 102 S.E. 617 (1920), relied upon by the plaintiffs, is clearly distinguishable. There an off-duty employee took a car from the garage without authority and wrecked it. The garageman was held liable for the damage to the automobile upon the theory that he did not exercise reasonable care in protecting the automobile left in his charge.

For the reasons stated, the Court is of the opinion that the Government is not liable for the plaintiffs' injuries.

Counsel for the Government should prepare an appropriate order dismissing the suits, submit the same to counsel for the plaintiffs for approval as to form, and then to the Court for entry.

The Clerk will send copies of this memorandum opinion to all counsel of record.