635 F.2d 1144
 James A. BETTIS, Plaintiff-Appellant,
v.
UNITED STATES of America, Defendant-Appellee.
Brenda J. BETTIS, by and through her father and next friend
James A. Bettis, Plaintiff-Appellant,
v.
UNITED STATES of America, Defendant-Appellee.
Sharon BETTIS, by and through her father and next friend
James A. Bettis, Plaintiff-Appellant,
v.
UNITED STATES of America, Defendant-Appellee.
Johnny Lee JACKSON and Mary Sheila Jackson, Plaintiffs-Appellants,
v.
UNITED STATES of America, Defendant-Appellee.
 No. 80-7110
 
 Summary Calendar.
 United States Court of Appeals,
Fifth Circuit.
 Unit B
 Jan. 27, 1981.
 Martin, Kilpatrick & Davidson, Paul Kilpatrick, Jr., John M. Tanzine, III, Columbus, Ga., for plaintiff-appellant.
 Gregory J. Leonard, Asst. U. S. Atty., Macon, Ga., for defendant-appellee.
 Appeal from the United States District Court for the Middle District of Georgia.
 Before HILL, FAY and ANDERSON, Circuit Judges.
 R. LANIER ANDERSON, III, Circuit Judge:
 
 
 1
 This is a joint appeal of four cases arising out of a single accident involving a member of the United States Army who was driving an Army vehicle. Each of the four cases was grounded in the Federal Tort Claims Act, 28 U.S.C.A. § 1346(b) (West 1976) and 28 U.S.C.A. § 2671 et seq. (West 1965) and sought monetary awards for personal injuries alleged to have been sustained by the plaintiffs as a result of alleged negligence of the driver of the vehicle as well as the negligence of his officers in entrusting the vehicle to the driver. The plaintiffs appeal the district court's order granting summary judgment to the government. We affirm in part the district court's decision in each case. Because we believe that the plaintiffs have submitted specific evidence creating a material factual issue under the theory of negligent entrustment, we vacate and remand in part with respect to each case.
 
 FACTS
 
 2
 The affidavits and depositions in support of, and in opposition to, the summary judgment motion reveal the following story.
 
 
 3
 Specialist 4 Larry D. Richardson was assigned as the driver of an International Scout for a small unit at Fort Benning, Georgia. His commanding officer was Lt. Ernest Lansing. Army regulations, and Richardson's orders, prohibited Richardson from using the Scout in any way for personal business. Richardson did not have authority to take the vehicle off base at any time without permission. After duty hours, usually around 5:00 P.M. each day, Richardson was under orders to log the Scout into a secured motor pool area a short distance from his barracks. Richardson did have authority to use the vehicle as transportation to and from work in the morning and evening.
 
 
 4
 At the time of the accident, Richardson had been Lt. Lansing's driver for eight months. Lt. Lansing knew of only one incident during this time when Richardson had made unauthorized use of the Scout. This involved taking the Scout to a school on post after duty hours. Lt. Lansing had reprimanded Richardson for this incident on the day just before the accident giving rise to the cases on appeal.
 
 
 5
 In the afternoon of December 13, 1977, Lt. Lansing's unit and another neighboring unit had a party. The party began after duty hours at 4:30 or 5:00 P.M., and approximately 15 to 20 people attended. Richardson did not come until about a half hour after the party had started because he had run some errands for the colonel. Richardson used the Scout for the errands. There is some indication that these errands may have been in conjunction with the party. Lt. Lansing contributed a keg of beer to the festivities and testified that he knew some attending had brought a bottle. Lt. Lansing deposed that he thought Richardson had four or five drinks of beer at the party, while Richardson swore to having several drinks. At approximately 7:30 P.M., Richardson left the party to return to his barracks. Lt. Lansing deposed that it was not until toward the end of the party that he realized Richardson had the Scout at the party. Lt. Lansing further deposed that because he was concerned that alcoholic beverages had been served and because Richardson had had some drinks, he did not want Richardson driving the vehicle back. As Richardson was leaving the party Lt. Lansing asked if he was "okay." Given assurances by Richardson, whom Lt. Lansing said appeared sober, Lt. Lansing permitted Richardson to take the Scout. Nevertheless, Lt. Lansing asked a Sergeant Davis who was also leaving the party to follow Richardson to make sure that Richardson "made the turn" to the barracks. As Sgt. Davis phrased the request, Lt. Lansing asked him to make sure Richardson got the Scout to the barracks. Lt. Lansing said that if Davis had not been leaving the party at that time, he probably would not have asked Davis to follow Richardson. Davis testified that during the short time he followed Richardson he observed nothing suspect in Richardson's driving.
 
 
 6
 After leaving the party, Richardson did not take the Scout to its assigned motor pool, but instead, parked it in a parking lot near his barracks. At his barracks, he had another beer and then left at about 9:30 P.M. to go into Columbus, Georgia, to see a girlfriend who owed him money. Richardson swears that this trip was for purely personal reasons and that he knew he did not have permission to have the Scout off base. While on his way, Richardson had second thoughts about being off post with an Army vehicle and turned around to return to the post. Unfortunately, while still off base and while making a left turn, Richardson was involved in the accident giving rise to these suits. He was charged with driving under the influence of alcohol and failure to yield the right-of-way by Georgia authorities. The latter charge has been dismissed because of a technicality, and a guilty plea has been entered on the charge of driving under the influence.
 
 
 7
 The district court, in granting the government's motions for summary judgment, held that the government had clearly shown that Richardson was using the Scout without authority and for his own personal use. It held that the plaintiffs had presented no specific evidence to rebut the government's showing with respect to this factor. The trial court also held, without elaboration, that the facts as developed showed there was no material factual issue under the theory of negligent entrustment which could establish the government's liability.
 
 LAW
 
 8
 Under the Federal Tort Claims Act, the government is liable for personal injury or loss of property
 
 
 9
 caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.
 
 
 10
 28 U.S.C.A. § 1346(b) (West 1976). Special provision is made for torts arising from the acts of the military. 28 U.S.C.A. § 2671 (West Supp.1980) provides that as used in § 1346(b), the term "employee of the government" includes members of the military or naval forces of the United States. It further provides that "acting within the scope of his office or employment" in the case of a member of the military, means "acting in line of duty." Ibid.[1] This circuit has stated that "acting in line of duty" is generally to be equated with the traditional notions of scope of employment, considering the special factors characteristic of military activity and discipline. Craft v. United States, 542 F.2d 1250 (5th Cir. 1976); Hinson v. United States, 257 F.2d 178 (5th Cir. 1958).
 
 
 11
 Since the government is liable under circumstances where a private person would be liable, state law where the alleged negligent act or omission occurred is controlling. Marcum v. United States, 621 F.2d 142 (5th Cir. 1980); Pesantes v. United States, 621 F.2d 175 (5th Cir. 1980). Since this accident occurred in Georgia, we look to that state's law defining "scope of employment" as used in respondeat superior, and in ascertaining the criteria of negligent entrustment.
 
 
 12
 (i) Respondeat superior.
 
 
 13
 One major thrust of the plaintiffs' theory is that the government may be held liable for Richardson's negligence under the doctrine of respondeat superior. A necessary condition for liability under this theory is that Richardson be within the scope of his employment at the time of the accident.
 
 
 14
 The plaintiffs concede that the evidence developed thus far indicates that Richardson was acting outside the scope of his employment. They argue, however, from the fact that Lt. Lansing apparently gave Sgt. Davis instructions to see that Richardson safely got the Scout back to the barracks, as opposed to the assigned motor pool, and from the fact that the Scout had been used to run an errand just before the party, that these facts might lead to the development of additional facts at trial indicating Richardson was within the scope of his employment. The quick answer to this argument is that in the face of well-developed facts on summary judgment refuting a necessary element, the opponent of summary judgment must produce significant probative evidence showing there is a genuine issue for trial. United Steelworkers v. University of Alabama, 599 F.2d 56 (5th Cir. 1979). Fed.R.Civ.P. 56(e) requires that an adverse party must respond to a well-supported motion for summary judgment with "specific facts showing that there is a genuine issue for trial." Mere speculation as to what may develop to establish a material issue of fact is not sufficient.
 
 
 15
 Plaintiffs contend that Atlanta Furniture Co. v. Walker, 51 Ga.App. 781, 181 S.E. 498 (1935), precludes summary judgment on this part of their claim since it establishes that an employee returning a vehicle to a night storage area is within the scope of his employment. In Atlanta Furniture Co., an employee, after making a delivery required by his employer, drove the employer's vehicle home for personal business. In the course of returning the vehicle to the vehicle's assigned parking area for the night after completing his business at home, the employee was in an accident. The Court of Appeals of Georgia held that the employee was within the scope of his employment. Plaintiffs argue that as Richardson was returning the Scout to the base at the time of the accident, he too was within the scope of his employment.
 
 
 16
 More apposite to the instant case are Brennan v. National Nu Grape Co., 106 Ga.App. 709, 128 S.E.2d 81 (1962), and Reddy-Waldhauer-Maffet Co. v. Spivey, 53 Ga.App. 117, 185 S.E. 147 (1936). These cases both involved employees who had parked employer vehicles in authorized nightly parking areas and who had ceased their day's employment before taking the vehicles on personal trips. In both cases, the employees were involved in accidents in returning the vehicles to the authorized nightly parking areas. In both cases the Court of Appeals of Georgia held that the personal use of the vehicles was not a deviation or detour still incidental to employment, but that the use of the vehicles was totally unauthorized from the beginning of the trip to the end. Accordingly, an employee in such a situation is not acting in the scope of his employment. Similarly, because Richardson's trip from beginning to end was totally unauthorized, he was not acting in the scope of his employment.
 
 
 17
 (ii) Negligent entrustment.
 
 
 18
 Appellants argue that the district court erred in finding that no material factual issue existed as to whether there was negligent entrustment of the jeep to Richardson by Lt. Lansing. We agree with appellants' contention on this point.
 
 
 19
 In Georgia, the theory of negligent entrustment predicates liability on a negligent act of an individual in lending his automobile to another to drive, with actual knowledge that the driver is incompetent or habitually reckless. The negligence in entrusting the automobile must concur, as a part of the proximate cause, with the negligent conduct of the driver on account of his incompetency and recklessness. Bragg v. Over & Under General Contractors, Inc., 148 Ga.App. 227, 251 S.E.2d 1 (1978); Alterman v. Jinks, 122 Ga.App. 859, 179 S.E.2d 92 (1970); Jones v. Cloud, 119 Ga.App. 697, 168 S.E.2d 598 (1969); Saunders v. Vikers, 116 Ga.App. 733, 158 S.E.2d 324 (1967); Vaughn v. Butler, 103 Ga.App. 884, 121 S.E.2d 72 (1961). While the person who is held liable for negligent entrustment is ordinarily the owner of the vehicle, such liability can also be imposed upon any other person who has control over the use of the vehicle and is negligent in entrusting it to another. Jones v. Cloud, supra; see also Ditmyer v. American Liberty Insurance Co., 117 Ga.App. 512, 160 S.E.2d 844, 851 (1968) ("The negligent entrustment theory applies only in an action against an owner or one who has negligently placed the vehicle in the hands of an incompetent driver.") Cf. Pugmire Lincoln Mercury, Inc. v. Sorrells, 142 Ga.App. 444, 236 S.E.2d 113 (1977) (declining to reach question of whether a vendor of automobile may be held liable under theory of negligent entrustment). When an employee negligently entrusts an automobile while acting within the scope of his employment, his negligent actions are imputable to his employer. Burks v. Green, 85 Ga.App. 327, 69 S.E.2d 686 (1952).
 
 
 20
 In Georgia, "(k)nowledge of the driver's incompetency is an essential element of the rule which holds an owner liable for furnishing his automobile to an incompetent driver and such knowledge must be actual rather than constructive." Jones v. Cloud, 168 S.E.2d at 600, quoting Harris v. Smith, 119 Ga.App. 306, 167 S.E.2d 198; Roebuck v. Payne, 109 Ga.App. 525, 136 S.E.2d 399 (1964); Hines v. Bell, 104 Ga.App. 76, 120 S.E.2d 892 (1961). Actual knowledge, however, can be demonstrated by circumstantial evidence. Jones v. Cloud, supra; Roebuck v. Payne, supra.
 
 
 21
 Even though the driver of an automobile may be driving outside an area of permitted use, the negligent entrustor may still be held liable. Medlock v. Barfield, 90 Ga.App. 759, 84 S.E.2d 113 (1954). Cf. Ditmyer v. American Liberty Insurance Co., supra, (where, despite finding that an employee driver was on a frolic of his own completely outside the scope of his employment, the Court of Appeals of Georgia noted in dictum that a theory of negligent entrustment might still lie against the employer). Rather than use a test which limits liability under negligent entrustment to accidents occurring during permitted use of the automobile, the Georgia courts have instead relied on the test of proximate cause. The Court of Appeals of Georgia has indicated that under the theory of negligent entrustment one who entrusts an automobile to an incompetent driver must exercise ordinary care to prevent injuries to persons within the range of foreseeable operation of the automobile.
 
 
 22
 In order for a party to be liable as for negligence, it is not necessary that he should have been able to anticipate the particular consequences which ensued. It is sufficient, if in ordinary prudence he might have foreseen that some injury would result from his act or omission, or that consequences of a generally injurious nature might result.
 
 
 23
 Medlock v. Barfield, 84 S.E.2d at 115, quoting Hertz Driv-Ur-Self Stations, Inc. v. Benson, 83 Ga.App. 866, 65 S.E.2d 191 (1951). The test has also been phrased as to whether the entrustor's negligence, concurring with the driver's negligence, was the proximate cause of the damage. Medlock v. Barfield, supra; McKinney v. Burke, 108 Ga.App. 501, 133 S.E.2d 383 (1963).
 
 
 24
 We believe that the facts developed thus far create a material factual issue making summary judgment inappropriate on the theory of negligent entrustment. Making every reasonable inference from the facts in favor of the plaintiffs, as we must, Alabama Farm Bureau Mutual Casualty Co. v. American Fidelity Life Ins. Co., 606 F.2d 602, 609 (5th Cir. 1979), cert. denied, 446 U.S. 933, 100 S.Ct. 2149, 64 L.Ed.2d 785 (1980), we conclude that the affidavits and depositions supporting and opposing summary judgment create a genuine issue of fact as to whether Richardson was intoxicated at the party, whether this intoxication was a cause of the accident, and whether Lt. Lansing knew Richardson was intoxicated when he permitted Richardson to drive the Scout from the party. The fact that Richardson did not have permission to use the vehicle off base after duty hours is not determinative of the issue under Georgia law. Instead, the question is whether any negligence on the part of Lt. Lansing is a proximate cause of the accident, and we believe enough is in the record on this issue to require trial.[2]
 
 
 25
 The government appears to argue that there is no jurisdiction under the Federal Tort Claims Act for the courts to address the theory of negligent entrustment since Richardson was outside the scope of his employment. The government misunderstands the theory of negligent entrustment. Negligent entrustment grounds liability on the negligence of the individual entrusting the vehicle to an incompetent. Sufficient evidence has been submitted to raise a question as to whether Lt. Lansing was negligent in allowing Richardson to drive. As Lt. Lansing had authority to control who drove the Scout, he was clearly acting in the scope of his employment in permitting Richardson to drive the Scout back to the barracks.
 
 
 26
 Our research reveals three cases touching on the theory of negligent entrustment as pleaded in a suit brought under the Federal Tort Claims Act. In each of these cases, the court rejected the plaintiffs' claim of negligent entrustment, and each had language supporting the government's position urged here.
 
 
 27
 In Mider v. United States, 322 F.2d 193 (6th Cir. 1963), the sergeant in charge of the motor pool entrusted a vehicle to a soldier who made known his intended and clearly unauthorized use and accompanied the soldier during a drunken frolic.[3] At the time of the entrustment, neither the soldier nor the entrustor had been drinking. The court rejected the allegation of negligent entrustment on grounds that it was the negligent operation of the vehicle at the time of the accident which was the proximate cause of the accident and that the accident was not the foreseeable result of the entrustment occurring approximately 8 hours earlier. 322 F.2d at 198.[4]
 
 
 28
 Tucker v. United States, 385 F.Supp. 717 (D.S.C.1974), involved the entrustment of a vehicle to a soldier who had been drinking and who lied about the authorization for the use of the vehicle. The district court there denied recovery on a theory of negligent entrustment, first, on the ground that the entrustor was not negligent because he did not know the soldier had been drinking. Second, the district court denied recovery even assuming the entrustor should have known the soldier had been drinking for the same reason as in Mider, namely that any negligent entrustment of a vehicle at 7:30 P.M. could not as a matter of law be the proximate cause of an accident at 1:45 A.M. the next morning.
 
 
 29
 Finally in Rodriguez v. United States, 328 F.Supp. 1389 (D.P.R.1971), aff'd. 455 F.2d 940 (1st Cir. 1972), a naval chief of watch asked a sailor "as a personal favor" to take a vehicle to find a third sailor. At the time of the entrustment, the sailor had not been drinking. The district court rejected a theory of negligent entrustment on the grounds that the purpose for the dispatch was clearly unauthorized, citing Mider for support.[5] 328 F.Supp. at 1391.
 
 
 30
 These three cases are distinguishable from the instant case for several reasons. In Mider and Rodriguez, the person to whom the vehicle was entrusted at the time had not been drinking and so the entrustment was not negligent.[6] In Tucker, the district court gave as an alternative holding that there was no evidence the entrustor knew or should have known the driver had been drinking. Here, there is evidence that Lt. Lansing knew or should have known Richardson had been drinking.
 
 
 31
 In Mider and Rodriguez, the courts noted that the uses of the vehicles for which they were entrusted were clearly unauthorized. In our case, Lt. Lansing did entrust the vehicle for an authorized use, namely, to return Richardson to his barracks.
 
 
 32
 Finally, Mider and Tucker were grounded on holdings that as a matter of law, the entrustment could not be considered the proximate cause of the accident. These holdings are not dispositive of this case since we must look to Georgia law to determine proximate cause. As noted above, in Georgia, proximate cause in the context of negligent entrustment has been stated to turn on whether in ordinary prudence, the entrustor might have foreseen "some injury" or "consequences of a generally injurious nature." Medlock v. Barfield, supra. We believe that where an accident occurred only a few hours after a party where the driver of a vehicle had been drinking, a Georgia jury could find that negligent entrustment at such a party was the proximate cause of the accident.[7]
 
 
 33
 With respect to plaintiffs' negligent entrustment theory, we conclude that the district court erred in granting summary judgment.
 
 
 34
 (iii) Failure to insure compliance with regulation requiring securing of vehicle in motor pool.
 
 
 35
 Plaintiffs raise a second argument focusing on the alleged negligence of Lt. Lansing in failing to insure that the Scout was returned to its assigned motor pool at the end of the day. They particularly focus on Sgt. Davis' recollection that Lt. Lansing asked him to be sure that Richardson returned the Scout to the barracks, and not to the motor pool.[8] Assuming arguendo that there was negligence in failing to insure that the Scout was returned to the motor pool, we fail to perceive how this theory alone is sufficient to establish the government's liability. This is especially so where even if Lt. Lansing did not adequately insure the return of the Scout to the motor pool, he nevertheless ordered the Scout to be parked at Richardson's barracks. In Georgia, one is not bound to anticipate or foresee and provide against that which is unusual or that which is only remotely and slightly probable. Ramsey v. Mercer, 142 Ga.App. 827, 237 S.E.2d 450 (1977), citing Moses v. Chapman, 113 Ga.App. 845(1), 149 S.E.2d 850 (1966); Delta Air Lines, Inc. v. Garmon, 139 Ga.App. 146, 227 S.E.2d 816 (1976). We cannot perceive how failure to insure compliance with the regulation requiring the Scout to be stored in the motor pool alone makes the injury here foreseeable. The obvious reason for the regulations concerning the securing of unattended vehicles is to prevent the loss of government property through theft or unauthorized use. Tyndall v. United States, 306 F.Supp. 266 (E.D.N.C.1969), aff'd. 430 F.2d 1180 (4th Cir. 1970). It is implausible to conclude that such regulations may fairly be interpreted as serving to protect the public from a drinking soldier or that failure to comply with such a regulation alone may have as a foreseeable result the injury here involved. Ibid. Accordingly, this theory should not be considered by the trial court on remand.
 
 
 36
 For the reasons stated above, the district court's decision is
 
 
 37
 AFFIRMED IN PART, REVERSED IN PART AND REMANDED.
 
 
 
 [1]
 28 U.S.C.A. § 2671 (West Supp.1980) reads in pertinent part:
 "Employee of the government" includes officers or employees of any federal agency, members of the military or naval forces of the United States, and persons acting on behalf of a federal agency in an official capacity, temporarily or permanently in the service of the United States, whether with or without compensation.
 "Acting within the scope of his office or employment," in the case of a member of the military or naval forces of the United States, means acting in line of duty.
 
 
 [2]
 Tyndall v. United States, 306 F.Supp. 266 (E.D.N.C.1969), aff'd. 430 F.2d 1180 (4th Cir. 1970), cited by the government for the proposition that any negligence by Richardson's superiors in allowing him access to the Scout was not a proximate cause of the accident, is distinguishable. In Tyndall, the alleged negligence was that of a corporal who left keys in a truck parked in a secured area. A drunk private took the truck without authority and caused an accident. The court in Tyndall did not concern itself with a theory of negligent entrustment since the corporal had not placed the truck in the hands of the drunk private. The court there found that any negligence by the corporal in leaving the keys in the truck was not a proximate cause of the accident because the purpose of securing the truck was to protect the government against loss by theft or unauthorized use and not to protect the public from a drunk-driving soldier and because to find this negligence a proximate cause would be impose on the armed forces a greater degree of care than imposed on the populace in general. 306 F.Supp. at 269. In our case, the duty imposed upon one not to entrust an automobile negligently to an incompetent driver is a duty designed to protect the public. As noted, Georgia has held that an entrustor may still be liable even though the driver may subsequently make unauthorized use of the vehicle. Medlock v. Barfield, supra. Moreover, imposing this duty on the armed forces treats them no different from the citizenry of Georgia
 
 
 [3]
 Although the soldier told the sergeant he had authority from an officer to use the vehicle, the Sixth Circuit assumed the requested use was clearly unauthorized
 
 
 [4]
 Mider also has language suggesting that another rationale for its holding was that the vehicle was dispatched for a clearly unauthorized use
 No one, not even an officer of the highest rank in the Armed Forces, may subject the government to liability for injuries resulting from the dispatch of a motor vehicle, for an unofficial and unauthorized purpose, to a member of the Armed Forces not acting within the scope of his employment, or line of duty.
 322 F.2d at 196-7. The Sixth Circuit also stated:
 It is true that Terloin (the sergeant in charge of the motor pool) had the authority to dispatch the motor vehicle in this case, but not for the purpose for which it was dispatched.
 322 F.2d at 198.
 
 
 [5]
 See the quote from Mider in note 3, supra
 
 
 [6]
 Although the entrustor in Mider went along with the entrustee and although both later became intoxicated, the Sixth Circuit apparently focused on the instant when the vehicle was actually dispatched from the base as the appropriate time to determine negligence under a theory of negligent entrustment
 
 
 [7]
 We question whether Tucker's alternative holding-that entrustment to a soldier, whom the entrustor should have known had been drinking, at 7:30 P.M. could not as a matter of South Carolina law be a proximate cause of an accident at 1:45 A.M. the next morning-can be squared with the Georgia law. Following the Georgia law of proximate cause, as we must in this case, we decline to follow this alternative holding in Tucker
 
 
 [8]
 The district court did not make any findings with respect to this allegation although it was raised by the plaintiffs in their brief opposing summary judgment. However, such findings of fact and conclusions of law are unnecessary in decisions on Rule 56 motions for summary judgment. Fed.R.Civ.P. 52(a)