774 F.2d 1163
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
James Price; Ardella Price American States Insurance Co.,
Plaintiff-Appellants Plaintiffs-Appellees,
v.
David R. Taasaas; James Taasaas; James Brown, Jr., Robert
Wright; John Does I thru V, Inclusive,
Defendants-Appellees Defendants-Appellants.
 Nos. 84-3317, 84-3426
 United States Court of Appeals, Sixth Circuit.
 9/13/85
 
 S.D.Ohio
 AFFIRMED
 ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO
 BEFORE: JONES and KRUPANSKY, Circuit Judges; and NEESE[1], Senior District Judge.
 PER CURIAM.
 
 
 1
 Plaintiffs James W. Price, Ardella Price and American States Insurance Co. appealed: (a) the district court's denial of their motions for directed verdict and/or judgment notwithstanding the verdict (JNOV); (b) denial of their motion for a new trial; (c) the directed verdict in favor of defendant Robert Wright (Wright); and (d) the jury verdict in this diversity negligence action as being predicated on erroneous jury instructions. Defendant James Brown, Jr. (Brown) cross-appealed the district court's partial summary judgment holding him vicariously liable for the negligence of non-party Jenny Pennington. Trial testimony disclosed the following facts relevant to the disposition of this appeal.
 
 
 2
 Defendant Brown owned a horse farm in Prospect, Kentucky, known as Paramount Arabian Stud Farm. Pursuant to an agreement with Brown, the defendant James Taasaas (J. Taasaas) supervised the care of the horses and farm in lieu of paying rent to Brown for use of Paramount Farm's facilities. J. Taasaas owned and operated a horse transporting business, Showtime Stables, Inc., which he operated from Paramount. A six-horse by defendant Wright which was on loan to Showtime was used by it in the operation of its horse transportation business.
 
 
 3
 Due to difficulties experienced by J. Taasaas in managing Paramount Farm, Brown and Taasaas restructured their business arrangement. Thus, on June 1, 1979, Brown assumed financial management responsibilities at Paramount, and J. Taasaas became the general manager. In this capacity, J. Taasaas was required to reside at the farm and care and train the horses which were bred and raised there. J. Taasaas was assisted in his responsibilities to Brown by his son David Taasaas (D. Taasaas) (a defendant herein) and non-party Jenny Pennington (Pennington), an assistant trainer and groomer.
 
 
 4
 On July 11, 1979, J. Taasaas, as owner and operator of Showtime Stables, Inc., and his son undertook to transport seven horses from Paramount Farm to Columbus, Ohio. Five of the horses were to be transported in the van on loan from Wright, and the remaining two horses were to travel in a two-horse trailer to be attached to the van. J. Taasaas was solely responsible for all aspects of the transportation including the the decision to connect the trailer behind the van.
 
 
 5
 Prior to connecting the two vehicles, J. Taasaas backed the van to the trailer, secured the trailer to the hitch, locked the lever, placed and secured the safety chains on the hitch, and connected the trailer lights. He also tightened the bolt on the ball hitch. Pennington assisted by directing J. Taasaas when he backed the six horse van to the hitch of the two horse trailer. She also verified that the connection between the van and the trailer held fast when the vehicles began moving forward.
 
 
 6
 After the horses were loaded into the van and trailer, D. Taasaas drove the convoy north on I-71 toward Columbus. Pennington rode in the van for the purpose of monitoring the horses. In Carrollton, Kentucky, D. Taasaas stopped the van and trailer combination to refuel. At this time he checked the horses and glanced at the hitch, but did not inspect it closely.
 
 
 7
 As the vehicles approached Kings Island, Ohio, the trailer detached from the van, traveled off the roadway, and struck plaintiff James Price (Price), who was standing near a guardrail adjacent to his parked automobile. Price was seriously injured and this litigation resulted, with Price, his wife and American States Insurance Co. seeking damages from defendants J. Taasaas, D. Taasaas, Brown and Wright for negligence.
 
 
 8
 Prior to trial, the court granted partial summary judgment against the 'primary tortfeasors' J. Taasaas, D. Taasaas and Pennington (who was not a named defendant to this action) on the issue of negligence.[2] The court further granted summary judgment against Brown on the basis that he was vicariously liable for the actions of Pennington because he was her employer. At the conclusion of plaintiffs' case, the court granted a directed verdict in favor of defendant Wright.
 
 
 9
 Following an eight-day trial, the issue of the proximate cause of plaintiffs' injuries was submitted to the jury. The answers to special interrogatories submitted to the jury disclosed the following findings:
 
 
 10
 1. The negligence of J. Taasaas was a proximate cause of plaintiffs' injuries;
 
 
 11
 2. J. Taasaas was acting as an independent contractor, not Brown's employee, when the negligent act occurred;
 
 
 12
 3. The negligence of D. Taasaas was a proximate cause of plaintiffs' injuries;
 
 
 13
 4. D. Taasaas was acting as independent contractor, not Brown's employee, when the accident. occurred;
 
 
 14
 5. The negligence of Pennington was not a proximate cause of plaintiff's injuries;
 
 
 15
 6. Brown was not negligent.
 
 
 16
 The jury concluded that J. and D. Taasaas wer liable to plaintiffs in the amount of $180,800. Judge Spiegel denied plaintiffs' motions for JNOV and new trial and the instant appeal ensued.
 
 
 17
 Plaintiffs' initial argument on appeal was that, in light of the court's summary judgment wherein J. Taasaas, D. Taasaas and Pennington were deemed negligent per se in connecting the trailer to the van, the court erred in failing to grant a summary judgment or judgment NOV on the issue of proximate cause. However, Ohio jurisprudence embraces the general rule that proximate cause is an issue of fact for the jury:
 
 
 18
 The universal general rule is that in order to recover in an action for a negligent injury, the negligence complained of must be the direct and proximate cause of the injuries inflicted. In other words, in an action to recover damages for injuries sustained through the negligence of another, the law regards only the direct and proximate results of the negligent act as creating a liability against the wrongdoer, and it does not regard, nor is there legal responsibility for, remote consequences and injuries from remote causes, . . .
 
 
 19
 In accordance with the above principle, negligence and injury without proximate cause is not enough for legal liability, and the mere coexistence of negligence and injury is not sufficient to establish a causal connection between the two. Even though the law may presume negligence from a person's violation of a statute, the law does not, from that presumption alone, presume that such negligence was the proximate cause of the injury.
 
 
 20
 39 O.Jur.2d Negligence Sec. 26 (1959) (and suppl. to 1984) (footnotes omitted).
 
 
 21
 In addition, it is well settled in Ohio that:
 
 
 22
 The determination of whether certain alleged negligence was the proximate cause of the injury sued for is ordinarily for the jury under proper instructions to the court . . . and when different reasonable inferences may be drawn from the evidence, the issue of causation is for the determination of the jury and it is not for the court to substitute its reasoning for that of the jury. . . . [e]ven though the party charged with negligence . . . is deemed to be negligent as a matter of law.'
 
 
 23
 39 O.Jur.2d Negligence, Sec. 190 (1959). See also Gallick v. Baltimore & Ohio R. Co., 372 U.S. 108, 83 S.Ct. 659, 9 L.Ed.2d 618 (1963); Baldridge v. Wright Gas Co., 154 Ohio St. 452, 96 N.E.2d 300 (1951).
 
 
 24
 Simply stated, a directed verdict or JNOV is not properly granted, in the context of a negligence action or other litigation, unless the evidence is such that there can be but one reasonable conclusion as to the proper verdict. Greer v. U.S., 408 F.2d 631, 635 (6th Cir. 1969). In ascertaining whether the evidence was sufficient to create an issue of fact suitable for resolution by the jury, neither the trial nor appellate court may weigh the evidence, pass on the credibility of witnesses, nor substitute its judgment for the jury. National Polymer Products v. Borg-Warner Corp., 660 F.2d 171, 178 (6th Cir. 1981). It is also elementary that the court must view the evidence in the light most favorable to the party against whom the motion is directed, drawing all reasonable inferences (as to the existence of a factual issue) in favor of the non-moving party. Id.
 
 
 25
 In the case at bar, plaintiffs urged that the pleadings and trial evidence lead to but one conclusion, namely, that the negligence of defendants D. Taasaas and J. Taasaas, Pennington and Brown (vicariously negligent through employee Pennington's actions) proximately caused the disconnection of the trailer and resulting injuries to plaintiffs. As previously noted, however, proximate cause cannot be assumed from the mere coexistence of negligence and injury. Hollywood Cartage Co. v. Wheeling & L.E.R. Co., 85 Ohio App. 182, 88 N.E.2d 278 (1948). Rather, the burden was upon plaintiffs to prove each defendant's role in causing the injury.
 
 
 26
 In the instant case, evidence was adduced which detailed the respective actions of the defendants in connecting the trailer to the van, and which essentially outlined the hierarchy of authority as to the procedure utilized. Of the three 'primary tortfeasors,' it was clear that J. Taasaas, as owner and operator of the horse hauling business and general manager of Paramount farm, had primary responsibility and control over the transportation plan. Second in command was his son, D. Taasaas, who drove the trailer and who failed to thoroughly inspect the hitch when he stopped to refuel. Last in line was Pennington, whose authority and involvement in deciding upon the manner in which the horses were to be transported was at best minimal. Thus, reasonable minds could have differed as to which defendant, or combination thereof, had proximately caused plaintiffs' injuries. Viewed from this perspective, the trial court was correct in submitting the issue of proximate cause to the jury. In addition, the jury's determination that the negligence of the two defendants who exhibited the greatest degree of authority and control over the transportation of the horses proximately caused plaintiffs' injuries, while Pennington's negligence did not, is supported by the evidence. Therefore, the jury verdict was not inconsistent or against the manifest weight of the evidence, and the denial of plaintiffs' JNOV motion was proper.
 
 
 27
 Plaintiffs next charged that the trial committed reversible error in failing to instruct that a servant may serve two masters simultaneously, a principle which finds it genesis in the Restatement (Second) of Agency Sec. 226 and Sec. 236[3]. Ohio has apparently neither expressly accepted nor rejected this legal theory.
 
 
 28
 However, the general concepts applicable to the principal-agent (or master-servant) relationship are not dispositive of the instant dispute; rather, the circumstances of this litigation are better analyzed under the legal theories articulated in Ohio jurisprudence which delineate the liability of an employer for the acts of his agent or servant as opposed to the actions of an independent contractor.
 
 
 29
 It is well settled that an employer is liable, pursuant to the doctrine of respondeat superior, for the acts of his agent or servant. Mider v. United States, 322 F.2d 193 (6th Cir. 1963); Baird v. Sickler, 60 Ohio St. 2d 652, 433 N.E.2d 593, 594 (1982). It is equally well established that the doctrine of respondeat superior does not apply when the relationship between the parties is that of employer and independent contractor. Strayer v. Lindeman, 68 Ohio St. 2d 32, 427 N.E.2d 781, 783 (1981); Van Meter v. Public Utilities Comm. of Ohio, 165 Ohio St. 391, 135 N.E.2d 848, 852 (1956); Councell v. Douglas, 163 Ohio St. 292, 126 N.E.2d 597, 599 (1955). The master-servant relationship exists only where the employer has the right to control the actions of the servant and when those actions are directed toward the attainment of an objective which the master seeks. Baird, 433 N.E.2d at 595 (citing Bobik v. Industrial Comm., 146 Ohio St. 187, 64 N.E.2d 829 (1946)). In short, when the employer has not retained control of, or the right to control, the mode and manner of the work which is the subject of the contract, he is not liable for the acts of the independent contractor. Van Meter, 135 N.E.2d at 852.
 
 
 30
 In the instant case, the evidence disclosed that Showtime Stables, which was engaged in transporting the horses on July 11, 1979, was wholly owned, operated and controlled by J. Taasaas. The trial testimony further disclosed that Brown, d/b/a Paramount Farm, had engaged J. Taasaas to transport the horses, and was treated like any other client of Showtime. Thus, the district court was correct in instructing the jury that it should determine, based upon the degree of control, if any, that Brown retained over J. and D. Taasaas in transporting the horses, whether J. and D. Taasaas were acting as employees of Brown or as independent contractors when the collision occurred.
 
 
 31
 Plaintiffs next urged that the trial court erred in directing a verdict for Defendant Wright, thereby dismissing him from the case. In ruling on this motion, the trial court applied the proper test in considering Wright's liability. See Wilstead v. International Brotherhood of Teamsters, Local Union No. 57., 580 F.2d 232, 235 (6th Cir. 1978) (directed verdict proper where jury could come to but one conclusion on an issue).
 
 
 32
 In their amended complaint, plaintiffs alleged that Wright negligently failed to maintain, equip, inspect, attach, and/or operate the van. However, the evidence adduced at trial reflected that Wright was not involved in maintaining the van from the time he had loaned it to Taasaas, nor was Wright present on July 11, 1979 when the trailer was connected to the van.
 
 
 33
 The law is clear that to hold a master vicariously liable for the torts of his servants, the servant must be conducting his master's affairs at the time of the negligent act. Mider v. United States, 322 F.2d 193 (6th Cir. 1963). It is well established in Ohio that a master-servant relationship exists only when one party exercises the right of control over the actions of another and those actions are directed toward the attainment of an objective which the former seeks. Baird v. Sickler, 69 Ohio St. 2d 652, 23 O.O. 3d 532 (1982); Bobik v. Indust. Comm., 146 Ohio St. 187, 32 O.O. 167 (1948).
 
 
 34
 Under this test, reasonable minds could not differ as to whether such a relationship existed between Wright and defendants J. and D. Taasaas. The evidence clearly disclosed that Wright possessed no control over the actions of these defendants, nor did he loan the van to them to derive any personal gain. Rather, J. Taasaas had exclusive authority as to the operation and use of the van during the eight and one-half month period prior to the accident, as well as the manner in which van was to be utilized to transport the horses.
 
 
 35
 Plaintiffs have also advanced the argument that a rebuttable presumption of the existence of a principal/agent relationship arises upon proof that a negligently operated vehicle displayed the name of the alleged principal of the operator, thus making the directed verdict inappropriate. McDougall v. Glenn Cartage Co., 169 Ohio St. 522, 160 N.E.2d 266 (1959); Cincinnati Transit, Inc. v. Tapley, 28 Ohio App. 2d 26, 273 N.E. 2d 906 (1971). While their citation of this presumption is correct, it is clear in the case sub judice that the presumption was fully rebutted. In Tapley, for example, the defendant testified that he was in fact an employee of the company whose logo appeared on the side of the truck, thus supporting the presumption. Tapley, 28 Ohio App. 2d at 26, 273 N.E. 2d at 906. In contrast, the uncontroverted evidence in this case demonstrated that J. and D. Taasaas were neither employees nor agents of Wright. In sum, testimony at trial conclusively rebutted any presumption of agency which arose due to Wright's logo appearing on the side of the van, and thus the directed verdict was not improvidently granted.
 
 
 36
 In his cross-appeal, defendant Brown challenged the summary judgment order wherein he was found to be vicariously liable for the negligence of Pennington. As the jury ultimately found that Pennington's negligence was not a proximate cause of plaintiff's injuries, thus negating Brown's liability, and as this court has identified no error committed by the court below warranting reversal, the concerns articulated in the cross-appeal need not be addressed.
 
 
 37
 In view of the foregoing, the decision of the district court is AFFIRMED.
 
 
 
 [1]
 Hon. C.G. Neese, Senior District Judge, United States District Court, Eastern District of Tennessee, sitting by designation
 
 
 [2]
 In their motion for summary judgment, plaintiffs argued that defendants were negligent per se due to their violation of Secs. 4532.32 and 4513.02(A) of the Ohio Revised Code, which sections proscribe towing a vehicle without a drawbar and safety chains of sufficient strength to prevent the vehicles from disengaging. In granting plaintiffs' motion, the district court simply stated that the motion 'on the issue of negligence was well-taken,' further observing that the motion had not been opposed by defendants
 
 
 [3]
 The specific instruction requested by the plaintiffs provides:
 A person may serve two masters at the same time. His conduct may be on behalf of one, the other, or both masters, depending on the facts.
 A person may have the status of servant and of independent contractor at the same time. In this case you may determine that James Taasaas and/or David Taasaas was/were employed by James Brown dba Paramount Arabian Stud Farm on July 11, 1979 in the capacity of servant, independent contractor or both at the same time.