Janet KINSEY, et al., Plaintiffs,

v.

Collin KINSEY, et al., Defendants.

No. 4:99CV529.

United States District Court,
N.D. Ohio.

Feb. 10, 2000.

Anthony N. Gemma, Matthew C. Giannini, Youngstown, OH, for Plaintiffs.

Steven J. Paffilas, Kent W. Penhallurick, Office of the U.S. Attorney, Cleveland, OH, for Defendants.

## MEMORANDUM OPINION AND ORDER

ECONOMUS, District Judge.

This matter is before the Court upon the government's Motion to Dismiss Plaintiffs' Complaint (Dkt.# 13). This negligence action arises from a motor vehicle accident which occurred on July 22, 1995. Plaintiffs allege that this court has subject matter jurisdiction over the case pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b)(1) and 2671, *et seq.* The government argues that the Court lacks jurisdiction since the government employee, Collin Kinsey Sr. ("Kinsey"), was not acting within the scope of his federal employment at the time of the accident, and, the United States would not be liable under Ohio law, because the Plaintiffs were unauthorized passengers in the government vehicle.

 A Federal court has broad power to decide whether it has jurisdiction to hear a case and may make factual findings which are decisive to the issue of jurisdiction. *Williamson v. Tucker,* 645 F.2d 404, 413 (5th Cir.), *cert. denied,* 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981). Where "subject matter jurisdiction is challenged under Rule 12(b)(1) ... the plaintiff has the burden of proving jurisdiction in order to survive the motion." *RMI Titanium Co. v. Westinghouse Elec. Corp.,* 78 F.3d 1125, 1134 (6th Cir.1996); *See also, Kehr Packages, Inc. v. Fidelcor, Inc.,* 926 F.2d 1406, 1409 (3d Cir.), *cert. denied,* 501 U.S. 1222, 111 S.Ct. 2839, 115 L.Ed.2d 1007 (1991).

A challenge to the court's subject matter jurisdiction under FED.R.CIV.P. 12(b)(1) differs from an attack on the merits pursuant to 12(b)(6). Rule 12(b)(1) does not afford a plaintiff all the procedural safeguards provided by 12(b)(6). *RMI Titanium,* 78 F.3d at 1134. Instead, Rule 12(b)(1) challenges a plaintiff's right to be heard in federal court.

 In the instant motion, Defendant challenges the existence of subject matter jurisdiction under Rule 12(b)(1). Therefore, no presumptive truthfulness attaches to a plaintiff's allegations. *See, Mortensen v. First Federal Sav. & Loan Ass'n,* 549 F.2d 884, 891 (3d Cir.1977). Accordingly, unlike a Rule 12(b)(6) motion, consideration of a Rule 12(b)(1) jurisdiction motion need not be limited; conflicting written and oral evidence may be considered and a court may "decide for itself the factual issues which determine jurisdiction." *Williamson,* 645 F.2d at 413.

 " 'Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit.' " *Dep't of Army v. Blue Fox, Inc.,* 525 U.S. 255, 119 S.Ct. 687, 690, 142 L.Ed.2d 718 (1999) *(Quoting FDIC v. Meyer,* 510 U.S. 471, 475, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994)). "Moreover, a waiver of the Government's sovereign immunity will be strictly construed, in terms of its scope, in favor of the sovereign." *Lane v. Pena,* 518 U.S. 187, 192, 116 S.Ct. 2092, 135 L.Ed.2d 486 (1996). "[L]imitations and conditions upon which the Government consents to be sued must be strictly observed and exceptions thereto are not to be implied." *Lehman v. Nakshian,* 453 U.S. 156, 161, 101 S.Ct. 2698, 69 L.Ed.2d 548 (1981). Sovereign immunity is jurisdictional in nature. *United States v. Mitchell,* 463 U.S. 206, 212, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983); *Gao v. Jenifer,* 185 F.3d 548, 554 (6th Cir.1999).

The FTCA waives sovereign immunity "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee

of the government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1).

A determination of whether an employee is acting within the scope of employment is a question of law, not fact, made in accordance with the law of the state where the conduct occurred. *RMI*, 78 F.3d at 1143.

In the case of a member of the military or naval forces of the United States, it is provided by statute that "[a]cting within the scope of his office or employment" means "acting in line of duty." 28 U.S.C. § 2671. "It has been conclusively settled however, ..., that although 'line of duty' may have a different meaning in connection with benefit claims by members of the Armed Forces or their dependents, the standard of government liability under the FTCA is with respect to both military and civilian employees that imposed by the *respondeat superior* doctrine of the state." *United States v. Taylor,* 236 F.2d 649, 653–54 (6th Cir.1956).

In Ohio, there can be no vicarious liability for an employee's torts if the negligent act occurs when the employee, although using his employer's vehicle, is off duty or is on a personal excursion for his own purposes. *Mider v. United States,* 322 F.2d 193, 197 (6th Cir.1963). Under the doctrine of *respondeat superior,* the test of a principal's liability is not whether a given act was performed during the existence of the agent's employment, but whether such act was done by the agent while engaged in the service of, and while acting for the principal, in the prosecution of the latter's business. *Id.* (*Citing Senn*

*v. Lackner* 157 Ohio St. 206, 105 N.E.2d 49 (1952)).

At the time of the accident, Kinsey was on active duty as a Major in the U.S. Army Reserve assigned to the 99th Reserve Support Command, Oakdale, Pa. Kinsey was serving as the officer-in-charge of the "Fourth Cliff Project." The project involved the conversion of a building into a community center by "high risk" teenagers under the supervision of Army Reserve personnel. The building was located in North Park, Pa. Project headquarters was located in Oakdale, Pa. Kinsey was housed by the government at the Clubhouse Inn in Moon Township, a fifteen-minute drive from North Park.

Three GSA vans were issued to Kinsey by the 99th Reserve Support Command, and were used to transport the teenagers between home and the work site, as well as to pick up construction materials and lunches.

On July 21, 1995, Kinsey drove one of the vans from North Park to Oakdale, and then to his home in Wellsville, Ohio. According to Kinsey, the primary purpose of his trip was to travel to Hartstown, Pa. to pick up a chainsaw from the home of a friend, and also to travel to Youngstown, Ohio to pick some additional tools and equipment which were located at his apartment building. Although he had used his own truck to pick up things he needed for the job in the past, he used to government van that day because it was more convenient. Kinsey dep. at 140–141.[1]

At approximately 9:00 p.m. that night, he and his wife and their two minor children, Daniel and David, traveled to Hartstown in the government van, to spend the night at a friend's house. The next day the family attended a karate tournament

---

1. Q: Even though you had used the pickup truck on other occasions when you went home and picked up tools and supplies and such, what was different about this weekend that caused you to use the Army van rather than the pickup truck?

A: Probably, the amount of stuff I was going to get. The convenience of using the van. I don't think I had a way back to the hotel to get my truck.

and a picnic, however, the GSA van was left at the residence.

On the way back to Wellsville, Kinsey stopped at his apartment in Youngstown to get a paint sprayer and some plumbing tools. Kinsey was returning to Wellsville when the van drove off the road, collided with a guardrail and several trees, and overturned.

The plaintiffs emphasize that Kinsey did not use the government van for the purpose of traveling between the Vincent's home in Hartstown and the karate tournament or the picnic site because "Kinsey obviously recognized that those activities were purely personal and that the government van should not have been used in connection therewith." Memorandum of Plaintiffs in Opposition to Motion of Defendant to Dismiss ("Opp.Brief") at p. 5 (Dkt.# 19). Plaintiffs then conclude that, after the tournament and picnic, Kinsey "returned to the performance of his duties at the time of the accident." Opp. Brief at 8.

There is no evidence that Kinsey was either expressly or impliedly directed by the Army to use his personal tools in the completion of the "Fourth Cliff Project." Likewise, there is no evidence to suggest that Kinsey was authorized by the Army to use the van to pick up those items. Plaintiffs argue that Kinsey, as officer-in-charge, had the discretion to dispatch project vehicles. However, as stated in *Mider*, "[N]o one, not even an officer of the highest rank in the Armed Forces, may subject the government to liability for injuries resulting from the dispatch of a motor vehicle, for an unofficial and unauthorized purpose, to a member of the Armed Forces not acting within the scope of his employment, or line of duty." *Mider*, 322 F.2d at 196.

Furthermore, although Kinsey states his main purpose in traveling to Hartford and Youngstown was to pick up tools for the job, the facts illustrate that the true purpose for the trip was to attend the tournament and picnic.[2] Certainly, Kinsey was not authorized to transport members of his family or a family friend to and from Hartstown.[3] Under the FTCA, the government would not be liable for personal injury or loss of property cause by the wrongful act of a member of the Armed Forces, while acting outside the scope of his authority, and in an unofficial capacity. *Mider*, 322 F.2d at 196. An employee is not engaged in his employer's business when he has taken his employer's vehicle for purely personal reasons. *Id.* at 197.

Consequently, it is the opinion of this Court that Kinsey was not "engaged in the service of, and while acting for the principal, in the prosecution of the latter's business." *Mider*, 322 F.2d at 197. As a matter of fact, none of the tools were found in the van when the vehicle was inventoried by the police following the accident. Kinsey himself states that the chainsaw was not in the van at the time of the accident. He had given it to his son to bring home because "it was all oily and [he] didn't have any papers to put down." Kinsey dep. at 163. Kinsey allegedly placed the paint sprayer and plumbing tools in the van. However, after the accident, a police inventory of personal property indicated that there were "no objects of value noted inside." Only two duffel bags containing "athletic clothing and toiletries" were received by the police. Kinsey speculated that these items may have been stolen. Kinsey dep. at 186–188.

Moreover, Kinsey was not on his way back to the job site, but on his way back to

---

**2.** Under Rule 12(b)(1), no presumptive truthfulness attaches to a plaintiff's allegations. *See Mortensen, supra.*

**3.** Kinsey admitted that transporting his family and a family friend in the van was a violation of the regulations governing the use of gov-

ernment vehicles. Kinsey dep. at 95–98. Kinsey also admitted that, had he not been involved in the accident, his subsequent travel from Wellsville back to his duty station would have violated the "Domicile to Duty" prohibition. *Id.* at 98.

**838**

Wellsville when the accident occurred. Even *assuming arguendo* that he was acting within the scope of his employment when he retrieved the tools in Hartsville and Youngstown, he had no business reason for driving back to Wellsville. Government vehicles are to be used solely for official purposes and the use of these vehicles to travel between work and home is expressly prohibited by federal law. 31 U.S.C. § 1344.

Finally, with respect to the issue of whether the United States, if a private person, would be liable, the Court relies upon *Cunningham v. Bell*, 149 Ohio St. 103, 77 N.E.2d 918 (1948) and *Union Gas & Electric Co. v. Crouch*, 123 Ohio St. 81, 174 N.E. 6 (1930). Most recently, in *Booze v. Amans*, 1997 WL 150124 (Ohio App. 8th Dist.1997), the Eighth District stated, in pertinent part, "Both *Cunningham* and *Union Gas & Electric* hold that an unauthorized passenger of an employee operating an employer's vehicle cannot bring an action in negligence against the employer because the unauthorized passenger is a trespasser as to the owner." *Id.* at *2 (citations omitted). Therefore, the government cannot be held liable for the injuries sustained by an unauthorized passenger in a government vehicle.

In conclusion, as the claims against the government in this case have been resolved before trial, this Court declines to exercise supplemental jurisdiction over the remaining state claims against Kinsey, individually. 28 U.S.C. § 1367(c)(3); *See also Taylor v. First of America Bank–Wayne*, 973 F.2d 1284, 1287 (6th Cir.1992). Accordingly, the government's motion to dismiss is **GRANTED** and this case is **DISMISSED**.

**IT IS SO ORDERED.**